Bruce Earl WARD *v.* STATE of Arkansas

CR 98-657 1 S.W.3d 1

Supreme Court of Arkansas
Opinion delivered September 30, 1999

*William R. Simpson, Jr.*, Public Defender, by: *Tammy L. Harris* and *Julia B. Jackson*, Deputy Public Defenders, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

D ONALD L. CORBIN, Justice. Appellant Bruce Earl Ward was convicted of the capital murder of eighteen-year-

old Rebecca Doss and sentenced to death by lethal injection. This is the third appeal of this matter. In the first appeal, this court affirmed Ward's capital-murder conviction, but reversed the death sentence and remanded for resentencing. *See Ward v. State*, 308 Ark. 415, 827 S.W.2d 110, *cert. denied*, 506 U.S. 841 (1992) (*Ward I*). The resentencing trial was held on February 9, 1993, resulting in Ward's being sentenced to death again. On appeal to this court, it was discovered that the court reporter responsible for transcribing the second trial had failed to record a number of the bench conferences. Attempts to reconstruct the record proved unsuccessful. As a result, this court reversed the death sentence and remanded the matter for a new sentencing trial. *See Ward v. State*, 321 Ark. 659, 906 S.W.2d 685 (1995) (*per curiam*) (*Ward II*). A third sentencing trial was held on October 27, 1997, in the Pulaski County Circuit Court. The jury sentenced Ward to death, and he appeals. Our jurisdiction is thus pursuant to Ark. Sup. Ct. R. 1-2(a)(2). Ward raises two points for reversal. We find no error and affirm.

As Ward's conviction has already been affirmed by this court, it is not necessary to recite the facts of this crime in great detail. Suffice it to say that on August 11, 1989, Little Rock Police Sergeant Michael Middleton was patrolling the area near the Jackpot convenience store on Rodney Parham Drive. Upon pulling into the parking lot, he noticed that the store's clerk was not at her normal work station. He then went into the store to try and locate the clerk. After he had looked through the store and was unable to find the clerk, Middleton called other officers to assist in the search. In the meantime, Middleton began to check outside the store, near the restrooms. He observed Ward walking from the restrooms toward a motorcycle that was parked nearby. Middleton spoke to Ward and told him that he was looking for the store's clerk. Ward told the officer that the clerk was inside the store, stocking. Ward stated that he had just had a cup of hot chocolate with the clerk and that she had given him the key to the restroom. Moments later, Sergeant Scott Timmons discovered Doss's body lying on the floor of the men's restroom. She had been strangled to death. Ward was arrested and subsequently convicted of the murder.

The State submitted only one aggravating circumstance to the jury, that Ward had previously committed a felony offense involving the use or threat of violence to another person. *See* Ark. Code Ann. § 5-4-604(3) (Repl. 1997). The prior violent act relied upon by the State was the 1977 homicide of Janet Needham in Erie, Pennsylvania, for which Ward was convicted of the crime of voluntary manslaughter. In addition to a certified copy of Ward's manslaughter conviction, the State introduced photographs of the crime scene and testimony from Detective David Bagnoni, one of two Erie police officers that investigated Mrs. Needham's death.

Ward argues that the trial court erred in allowing the State to present the testimony of Detective Bagnoni and the photographs of the crime scene in lieu of the fact that Ward did not dispute nor challenge his prior conviction of voluntary manslaughter. Ward objected on the grounds that the evidence was not relevant and was highly prejudicial and inflammatory. Relying on this court's holding in *Ward I*, the trial court allowed the State to present the evidence. We agree that this court's previous ruling decided this issue and is now the law of the case.

The law-of-the-case doctrine ordinarily arises in the case of a second appeal and requires that matters decided in the first appeal be considered concluded. *Camargo v. State*, 337 Ark. 105, 987 S.W.2d 680 (1999). The doctrine is not inflexible and does not absolutely preclude correction of error, but it prevents an issue raised in a prior appeal from being raised in a subsequent appeal "unless the evidence materially varies between the two appeals." *Id.* at 110, 987 S.W.2d at 683 (quoting *Kemp v. State*, 335 Ark. 139, 142, 983 S.W.2d 383, 385 (1998) (quoting *Fairchild v. Norris*, 317 Ark. 166, 170, 876 S.W.2d 588, 590, *cert. denied*, 513 U.S. 974 (1994))). The doctrine precludes the trial court on remand from considering and deciding questions that were explicitly or implicitly determined on appeal. *Id.*; *Foreman v. State*, 328 Ark. 583, 945 S.W.2d 926 (1997).

Ward's current argument is merely a duplication of that previously argued. In the first appeal, Ward argued that the trial court erred in allowing the State to introduce photographs and

police testimony concerning Ward's prior manslaughter conviction. He argued that undue prejudice resulted from the admission of the photographs and police testimony because the State could conclusively prove the aggravating circumstance with the prior conviction alone. This court rejected Ward's argument, holding:

> In *Johnson v. Mississippi*, 486 U.S. 578 (1988), the Supreme Court held that a finding of aggravating circumstances based on a prior felony conviction could not stand if the prior felony conviction was later overturned. The Supreme Court noted that the prosecutor in *Johnson* had relied solely on the document of conviction, and had not introduced any evidence relating to the prior felony itself. *Id.* at 585. We recently relied on the *Johnson* holding in *Sanders v. State*, 308 Ark. 178, 824 S.W.2d 353 (1992), to remand a death sentence for resentencing. In the *Sanders* case, the state relied solely on the defendant's prior conviction to establish the aggravating circumstance of a previous felony.
>
> *In this case, if the state did not introduce evidence regarding the circumstances of appellant's prior manslaughter conviction, the validity of the jury's aggravating circumstances finding would remain contingent upon Pennsylvania not reversing appellant's prior conviction.* In light of the *Johnson* holding, the probative value of the extraneous evidence increases significantly.

*Ward I*, 308 Ark. at 423, 827 S.W.2d at 114 (emphasis added). This court went on to analyze the evidence under Ark. R. Evid. 403 and concluded that the trial court did not abuse its discretion in allowing the evidence, as "the photographs and testimony were relevant in establishing the aggravating circumstances of a previously committed felony, and in illuminating the facts for the jury's consideration." *Id.* at 424, 827 S.W.2d at 114.

■ The record reflects that the evidence presented at each sentencing trial was materially the same. The photographs introduced at the first trial "depicted the body of a young woman, naked from below the torso, lying in a wooded area with the contents of her purse strewn out beside her." *Id.* at 423, 827 S.W.2d at 114. The photographs introduced at the last trial depicted the same scenes. The substance of the police testimony introduced at both trials was substantially the same, though given by different

persons. In the first trial, the testimony was given by Detective Dominick DiPaolo, while the testimony in this trial was given by Detective Bagnoni. There is no dispute that the officers jointly investigated the Pennsylvania homicide. Both officers described the crime scene, the victim's injuries and cause of death, and the circumstances connecting Ward to the homicide. Accordingly, because this court considered and decided in *Ward I* the same argument raised in the instant appeal, our prior decision with regard to that matter is binding in this appeal.

Ward also asserts that the trial court erred in refusing to grant a mistrial when Detective Bagnoni testified concerning missing credit cards belonging to Mrs. Needham. He argues that the testimony was unfairly prejudicial to him because it amounted to an unsubstantiated allegation of criminal activity, *i.e.*, robbery or theft, for which he was never charged or convicted. The record reflects the following pertinent testimony from Bagnoni.

Q. And did you find anything at the scene that led you to an arrest in this case?

A. Yes, I did. Our ID division was called and at that time they responded to the scene. They took photographs and they were there to collect evidence. After everything had been processed by them, we began to go through the items in the purse to determine what was there and what was not there and we came upon a picture of Bruce Earl Ward with his phone number on the back of it. I believe it was his phone number.

Q. Detective, do you see Bruce Earl Ward in the courtroom today?

A. Yes, I do. He's sitting at the — defendant in the sort of blue and pink or purple shirt with the beard.

Ms. LARUE: Let the witness — let the record reflect that this witness has identified the defendant, Bruce Ward.

Ms. LARUE *continuing*:

Q. After finding that photograph, did you continue your investigation?

A. Yes, I did.

Q. And did you — what other evidence did you locate that morning or did you find out about that morning concerning the contents of Ms. Needham's purse?

A. That morning when we looked at the body originally, the ligature marks around the neck were comparative to the purse strap. They were — we compared it and we had asked that the ID division transport the purse along with the body so they could be compared at a later time.

Q. But did you compare them yourself at the crime scene?

A. Yes.

Q. Did you later make contact with a gas station attendant—

A. Yes, I did.

Q. —there in Erie, Pennsylvania? And what was the result of that meeting?

A. We had determined that out of her purse there were some credit cards missing and eventually we determined that one of the credit cards had been used.

At that point in the questioning, Ward moved for a mistrial on the ground that the jury had heard evidence of a crime for which he was not tried or convicted. Ward explained that he had been originally charged with the robbery of the victim, but that the charge was dismissed by the Pennsylvania prosecutor prior to his trial. The State argued that the evidence was being offered to show how the police came to arrest Ward for the crime. The trial court denied the motion for mistrial, but instructed the prosecutor to move along with that line of questioning. No admonition or cautionary instruction was ever requested by Ward. Ward now urges that the trial court's ruling was erroneous.

 We note at the outset that the trial court has wide discretion in admitting evidence, including that presented during the penalty phase of the trial, and we will not reverse the trial court's ruling absent an abuse of discretion. *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999) (citing *McClish v. State*, 331 Ark. 295, 962 S.W.2d 332 (1998); *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998)). Moreover, a mistrial is a drastic remedy and should only be declared when there has been an error so prejudi-

cial that justice cannot be served by continuing the trial, or when the fundamental fairness of the trial itself has been manifestly affected. *McFarland v. State*, 337 Ark. 386, 989 S.W.2d 899 (1999); *Barr v. State*, 336 Ark. 220, 984 S.W.2d 792 (1999). The trial court has wide discretion in granting or denying a motion for a mistrial, and absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. *Id.* We defer to the trial court, as it is in a superior position to determine the effect of the remark on the jury. *Taylor v. State*, 334 Ark. 339, 974 S.W.2d 454 (1998); *Kimble v. State*, 331 Ark. 155, 959 S.W.2d 43 (1998).

In support of his argument, Ward relies on this court's holding in *Ward I* involving the trial court's admission of a collection of Pennsylvania documents relating to Ward's prior manslaughter conviction. Among the documents admitted at the first trial were a felony information charging Ward with the murder of Mrs. Needham and a police affidavit alleging that he had committed the additional offenses of rape and robbery. This court held:

> We agree with appellant that the admission of these unsubstantiated allegations was prejudicial error in the penalty phase of the trial.
>
> The state offered no proof that appellant had previously committed the offenses of murder, rape, and robbery. While we stated earlier that the state is not limited to admission of a prior conviction in proving that a defendant previously committed a prior felony, mere allegations do not constitute proof. In this case, the prejudicial effect of the rape and robbery allegations was compounded by the photographs depicting an unclothed victim and the testimony regarding the strewn contents of the victim's purse.

308 Ark. at 424, 827 S.W.2d at 115 (citation omitted). Ward now asserts that this ruling mandates a reversal in this instance. We disagree.

Arkansas Code Annotated § 5-4-602(4) (Repl. 1997) provides in part that "[i]n determining sentence, evidence may be presented to the jury as to any matters relating to aggravating circumstances enumerated in § 5-4-604[.]" Our aggravating-circumstances statute "is concerned with disclosing whether the

defendant's history establishes such a propensity for violence that it will reoccur." *Whitmore v. State*, 296 Ark. 308, 316, 756 S.W.2d 890, 894 (1988). One such aggravating circumstance is that the defendant previously committed another felony, an element of which was the use or threat of violence. This circumstance may be proved regardless of whether the prior violent felony resulted in a conviction against the defendant. *See Greene v. State*, 335 Ark. 1, 977 S.W.2d 192 (1998). Obviously, when the prior violent felony has not resulted in a conviction, the State must present evidence showing that the defendant committed the act. *See Miller v. State*, 280 Ark. 551, 660 S.W.2d 163 (1983). Even when a conviction exists, however, it may well be folly for the State to rely solely on the prior conviction. *See Ward I*, 308 Ark. 415, 827 S.W.2d 110. Ward's argument raises the question of what evidence the State may present to prove the defendant's prior commission of a violent felony that resulted in a conviction. Pursuant to section 5-4-602(4), we conclude that the State may present "any matters relating to" the prior violent felony, including the circumstances surrounding the commission of the prior crime.

■ It is fundamental that all the circumstances surrounding a particular crime may be shown, even if those circumstances would constitute a separate criminal act or acts, provided that the criminal acts are intermingled and contemporaneous with one another. *See McGehee*, 338 Ark. 152, 992 S.W.2d 110; *Brown v. State*, 305 Ark. 53, 805 S.W.2d 73 (1991). The relevance of circumstances that tie the perpetrator to the victim and raise a possible motive for the killing is patently obvious. *Johnson v. State*, 326 Ark. 430, 934 S.W.2d 179 (1996), *cert. denied*, 520 U.S. 1242 (1997). In short, the State is entitled to present evidence showing circumstances that explain the act, show a motive for killing, or illustrate the defendant's state of mind. *McGehee*, 338 Ark. 152, 992 S.W.2d 110. Moreover, when the purpose of the evidence is to show a motive for killing, anything and everything that *might* have influenced the commission of the act may, as a rule, be shown. *Id.* Though the foregoing holdings pertain to evidence used during the guilt phase of the trial, we have recently upheld the admission of other criminal acts to prove the aggravating circumstance that the defendant committed a prior violent felony.

*See Williams v. State*, 338 Ark. 97, 991 S.W.2d 605 (1999) (holding that to prove a prior conviction of kidnapping, the State was permitted to introduce testimony from the victim that the defendant raped her, as engaging in deviate sexual activity is one of the stated purposes of the crime of kidnapping).

Here, Detective Bagnoni testified as to the violent circumstances of Mrs. Needham's death, namely that she was strangled and that the marks on her neck compared favorably to the strap of her purse. This testimony was corroborated by the victim's death certificate, which indicated that she had been strangled. Bagnoni described the crime scene, using two black and white photographs to assist him, and pointed out how the contents of the victim's purse had been strewn about the area of her body. He stated that near the contents of the purse was a photograph of Ward with a telephone number written on the back. He indicated that he subsequently came into contact with an attendant at a local gas station, and that as a result of that contact, he made the determination that some of Mrs. Needham's credit cards were missing and that one had been used.

 We conclude that Bagnoni's testimony was relevant, as it linked Ward to the crime of which he was ultimately convicted, that of voluntary manslaughter. Although Bagnoni's testimony was preempted by Ward's objection, the obvious implication was that Ward used the stolen credit card at the gas station, and that this act led police to arrest him for Mrs. Needham's death. Such testimony is clearly probative of Ward's actual participation in the victim's death. As this court explained in *Ward I*, had the State not presented evidence of the circumstances of the prior crime, the validity of the jury's finding of an aggravating circumstance would remain contingent upon Pennsylvania not reversing Ward's prior conviction. *See Johnson v. Mississippi*, 486 U.S. 578 (1988). Furthermore, unlike the offensive documents introduced in *Ward I*, there was no mention to the jury that Ward was charged with or otherwise accused of the theft or robbery of Mrs. Needham.

 Additionally, we conclude that an admonition to the jury, that Ward was not convicted of any crime other than voluntary manslaughter and that the testimony may only be con-

sidered in explaining the circumstances of the manslaughter conviction, would have been sufficient to cure any prejudice that may have resulted from the testimony. *See Kimble*, 331 Ark. 155, 959 S.W.2d 43 (holding that an admonition is sufficient to cure a witness's reference to a defendant's previous record during the guilt phase of the trial). An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *Id.* It is the defendant's obligation to ask for a curative instruction, and the failure to do so will not inure to his benefit on appeal. *Id.* Because Ward did not request such an admonition, we cannot say that the trial court abused its discretion in denying his motion for mistrial.

In accordance with Rule 4-3(h), the record has been reviewed for adverse rulings objected to by Appellant but not argued on appeal, and no such reversible errors were found. For the aforementioned reasons, the judgment is affirmed.

THORNTON, J., dissents.

RAY THORNTON, Justice, dissenting. Bruce Earl Ward has been convicted of capital murder. The only remaining issue is whether the penalty for that crime should be life imprisonment without parole, or death. In the original appeal, *Ward v. State*, 308 Ark. 415, 827 S.W.2d 110 (1992) (*Ward I*), we remanded the case for resentencing because we found that the State committed reversible error by introducing unproven allegations of other crimes during the sentencing phase of the trial.

In *Ward I*, the offending evidence was presented by way of a document, specifically, Exhibit 18, attached to a Pennsylvania conviction of voluntary manslaughter. That exhibit suggested the possibility of other crimes that Ward was neither charged with nor convicted of committing. In this case, the tainting material was presented in testimony. In *Ward I*, we stated that, "We agree with appellant that the admission of these unsubstantiated allegations was prejudicial error in the penalty phase of the trial." *Id.* Because I believe that the State made the same error during this resentencing hearing, I respectfully dissent and suggest that the State be required to conduct a resentencing hearing for the purpose of presenting evidence of the Pennsylvania crime of volun-

tary manslaughter without enhancing it with evidence that suggests, but does not prove, an additional crime that Ward was not charged with committing.

I respectfully dissent.