SLIP OPINION



Cite as 2015 Ark. 62

# SUPREME COURT OF ARKANSAS

No. CR-00-1322

BRUCE EARL WARD

PETITIONER

V.

STATE OF ARKANSAS

RESPONDENT

**Opinion Delivered** February 26, 2015

MOTION TO RECALL
POSTCONVICTION-APPEAL
MANDATE [PULASKI COUNTY
CIRCUIT COURT, SEVENTH
DIVISION, NO. CR-89-1836]

MOTION DENIED.

**COURTNEY HUDSON GOODSON, Associate Justice**

Petitioner Bruce Earl Ward moves this court to recall the mandate on his appeal affirming the circuit court's denial of postconviction relief. Ward identifies three issues that he suggests amounted to a defect or breakdown in the appellate process to support recalling the mandate. First, he points out that his postconviction petition was unverified. Second, he alleges that he was incompetent at the time of the postconviction hearing; and third, he argues that his counsel performed deficiently by failing to raise any issue of mental health or competency in the postconviction proceedings. We conclude that Ward has failed to establish the extraordinary circumstances necessary to justify a recall of his postconviction appeal mandate, and we deny his motion.

In 1990, a jury convicted Ward of capital murder and imposed the death penalty. On appeal, this court affirmed his conviction but reversed his sentence due to a prejudicial error that occurred during the sentencing phase of the trial. *Ward v. State*, 308 Ark. 415, 827

SLIP OPINION

S.W.2d 110 (1992) (*Ward I*). On remand, a jury again sentenced Ward to death, but we reversed based on an error made by the court reporter. *Ward v. State*, 321 Ark. 659, 906 S.W.2d 685 (1995) (per curiam) (*Ward II*). Thereafter, a third jury sentenced Ward to death, and we affirmed his sentence. *Ward v. State*, 338 Ark. 619, 1 S.W.3d 1 (1999) (*Ward III*). Ward then filed a petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.5, which the circuit court denied after a hearing. On appeal, we affirmed the circuit court's denial of relief. *Ward v. State*, 350 Ark. 69, 84 S.W.3d 863 (2002) (*Ward IV*).

Ward has now petitioned this court to recall the mandate in *Ward IV* based on the three aforementioned reasons. This court will recall a mandate and reopen a case only in extraordinary circumstances. *Robbins v. State*, 353 Ark. 556, 114 S.W.3d 217 (2003). To establish the extraordinary circumstances that would warrant the recall of a mandate or the reopening of a case, we have enumerated certain factors to be considered, namely: (1) the presence of a defect in the appellate process, (2) a dismissal of proceedings in federal court because of unexhausted state-court claims, and (3) the appeal is a death case that requires heightened scrutiny. *Roberts v. State*, 2013 Ark. 57, 426 S.W.3d 372. We have held that these factors are not necessarily to be strictly applied but rather that they serve as a guide in determining whether to recall a mandate. *Nooner v. State*, 2014 Ark. 296, 438 S.W.3d 233.

In this case, Ward first argues that we should recall the mandate because his postconviction petition was unverified, and he asserts that the lack of verification constitutes a defect in the appellate process sufficient to support recalling the mandate in his

SLIP OPINION

postconviction appeal, citing to our decision in *Wooten v. State*, 2010 Ark. 467, 370 S.W.3d 475. The State argues that we should not follow *Wooten* because the appropriate relief for a defendant in a death case who has filed an unverified postconviction petition is to allow the defendant to verify his petition and supplement the record so that this court may review the substance of his postconviction appeal. In light of the fact that this court previously reviewed Ward's postconviction appeal despite the unverified petition, the State contends that such relief in this instance would be moot.

The requirement for verification is found in Arkansas Rule of Criminal Procedure 37.1(c) and requires the petitioner to execute an affidavit swearing that the petitioner has read the petition and that the facts stated in the petition are true, correct, and complete to the best of petitioner's knowledge and belief. This court has held that the verification requirement for a postconviction-relief petition "is of substantive importance to prevent perjury." *Boyle v. State*, 362 Ark. 248, 250, 208 S.W.3d 134, 136 (2005). Furthermore, we have routinely affirmed the denial of postconviction relief where the petition is not verified. *See, e.g.*, *Butler v. State*, 2014 Ark. 380 (per curiam). However, in the unique case involving a defendant sentenced to death, we have remanded, rather than summarily affirming the denial of postconviction relief, so that the defendant can verify his petition and supplement the record with the verified petition. *Howard v. State*, 366 Ark. 453, 236 S.W.3d 508 (2006).

Keeping the foregoing principles in mind, we hold that Ward has failed to establish a defect or breakdown in the appellate process because this court has reviewed his

3

SLIP OPINION

postconviction appeal, notwithstanding the unverified petition. Pursuant to our decision in *Howard*, Ward's remedy for submitting an unverified petition in his direct postconviction appeal would have been limited to a remand to allow him to verify his petition and to supplement the record, followed by an appeal of his original postconviction petition. Because we failed to identify that Ward's petition was unverified, we proceeded with our review of his postconviction appeal. As a result, Ward received the same appellate process he would have received if we had noted the unverified petition and followed the procedure outlined in *Howard*. Consequently, the failure of this court to acknowledge his unverified petition enured to his benefit. Accordingly, we cannot say that there was a breakdown or defect in the appellate process.

We recognize that our holding today is in conflict with our decision in *Wooten*, *supra*. In *Wooten*, this court reached a different result by erroneously relying on *Collins v. State*, 365 Ark. 411, 321 S.W.3d 717 (2006). While both *Collins* and *Wooten* involved unverified postconviction petitions, it was the cumulation of postconviction errors that resulted in a breakdown of the appellate process in *Collins*. Specifically, the circuit court appointed numerous counsel to represent Collins in his postconviction proceeding, but none were qualified under Rule 37.5 and none had filed a compliant postconviction petition. Eventually, the circuit court held a hearing purportedly to adjudicate his Rule 37.5 claims, but the arguments addressed in the hearing were not contained in the unverified petition. In short, at no point did Collins receive a hearing or appeal on any postconviction petition he

SLIP OPINION

filed. On appeal, this court held that the multitude of problems in Collins's Rule 37.5 proceeding amounted to a "breakdown in the appellate process," and we remanded to allow him to file a new petition. Thus, the holding and relief in *Collins* turned on the fact that his postconviction hearing and appeal were not based on a written petition, as opposed to the lack of verification. Ergo, the majority in *Wooten* erred by oversimplifying the decision in *Collins* to justify its holding that the lack of verification itself constitutes a defect or breakdown in the appellate process.

As a general rule, we are bound to follow prior case law under the doctrine of stare decisis, a policy designed to lend predictability and stability to the law. *Low v. Ins. Co. of N. Am.*, 364 Ark. 427, 220 S.W.3d 670 (2005). However, we are not bound to follow a previous decision when there has been palpable error in legal analysis. *Nooner v. State*, 2014 Ark. 296, 438 S.W.3d 233. The *Wooten* court's reliance on *Collins* is such an error, and resulted in a holding that is out of step with the rest of our jurisprudence on the verification requirement and recalling the mandate. Accordingly, we hereby overrule it.

In dissent, Justice Baker maintains that we should recall the mandate in this case, as this court lacked jurisdiction to hear Ward's postconviction appeal because his Rule 37.5 petition was unverified. With all due respect, this position fails for two reasons. First, this court has routinely afforded lenient treatment to otherwise jurisdictional issues in capital cases because of the unique nature of the death penalty. Indeed, while we have recognized the principle that the requirements of Rule 37 are jurisdictional in nature, we have held that rule

SLIP OPINION

in abeyance where the death penalty has been imposed. *See, e.g. Jackson v. State*, 343 Ark.

613 (2001). For instance, in *Jackson*, we declined to impose a jurisdictional bar where the

appellant had failed to file a timely petition under Rule 37.5, noting that the general rule

against jurisdiction did not apply. We stated,

> If the present case were a non-capital case, then the general rule would
> certainly be that the time limits set forth in Rule 37 are jurisdictional in nature
> and would apply. . . However, because this is a capital case involving the death
> penalty and involving Rule 37.5, it calls on this Court to address whether due
> process requirements of fundamental fairness compel the circuit court to
> address appellant's Rule 37 petitions on their merits.

*Jackson*, 343 Ark. at 616–617; 37 S.W.3d at 597. Thus, we have refused to impose strict,

jurisdictional restrictions on the requirements of Rule 37.5 and have instead allowed capital

defendants to obtain appellate relief notwithstanding shortcomings that, in a non-capital case,

would have circumvented this court's jurisdiction. *See Coulter v. State*, 340 Ark. 717, 13

S.W.3d 171 (2000) (per curiam) (reviewing appeal despite untimely notice of appeal); *Porter

v. State*, 339 Ark. 15, 2 S.W.3d 73 (1999) (reviewing appeal despite untimely Rule 37.5

petition). Accordingly we have held that "fundamental fairness, *in this narrowest of instances

where the death penalty is involved,* dictates an exception." *Porter*, 339 Ark. at 19, 2 S.W.3d at

76 (emphasis in original).

Second, the question here is whether Ward has established a defect or breakdown in

the appellate process. As noted above, Ward received the process to which he was entitled,

despite his unverified petition, because we reviewed his postconviction arguments on appeal.

In short, we exercised jurisdiction over his appeal, which, in light of our historically lenient

SLIP OPINION

treatment of jurisdictional issues in death-penalty cases, is precisely what we would have done if we had identified the lack of verification.

Ward's second justification for recalling the mandate is that he was mentally incompetent during his Rule 37.5 proceedings, resulting in a breakdown in the appellate process sufficient to justify recalling the mandate. Ward argues that our decision in *Roberts*, *supra*, supports his position that his alleged mental incompetence during his Rule 37.5 proceedings requires recalling the mandate.

Ward misconstrues our holding in *Roberts*. In *Roberts*, the defendant initially waived his right to appeal in 2000. Following court-ordered competency evaluations, the circuit court ruled that Roberts was competent to waive his right to appeal. In 2003, this court affirmed Roberts's conviction on direct appeal, including the circuit court's findings that he had competently waived his right to appeal. One month later, Roberts appeared pro se before the circuit court and waived his right to postconviction relief. The circuit court reviewed the previous evaluations performed in 2000 and ruled that Roberts's waiver of postconviction relief was knowing and voluntary. We reviewed his postconviction proceedings and upheld the circuit court's findings. In 2012, Roberts filed a motion to recall the mandate, arguing that a timely mental evaluation was necessary to determine whether he had made a knowing and voluntary waiver of his postconviction rights. We held that the evaluations used by the circuit court and this court in regards to Roberts's competency to waive his postconviction rights were insufficient because they had occurred over three years prior to the postconviction

SLIP OPINION

hearing and were focused on competency to stand trial rather than competency to elect execution.

The instant case is markedly different from *Roberts*. The issue in *Roberts* was the defendant's competency to waive postconviction rights. In this case, Ward did not waive his postconviction rights. In fact, Ward's appointed counsel presented arguments to the circuit court on Ward's behalf and to this court on appeal. Thus, unlike *Roberts*, where the defendant had made no postconviction arguments and received no postconviction process as a result of his waiver, here, Ward received a postconviction hearing and appeal.

More fundamentally, unlike in *Roberts*, where the circuit court was required to make a finding regarding Roberts's competency to waive postconviction relief, we have no rule or caselaw mandating a circuit court to make a finding of general competency to proceed in a postconviction matter. *Roberts* involved a waiver of postconviction relief, which is governed by Arkansas Rule of Criminal Procedure 37.5. That rule mandates that a circuit court appoint postconviction counsel for a defendant if it finds that the defendant is indigent and either accepts the appointment of the attorney or is unable to make a competent decision about whether to accept or reject an attorney. Thus, the circuit court is required to review a defendant's competency and make a finding thereon if the defendant seeks to waive his postconviction rights. Ark. R. Crim. P. 37.5. Accordingly, pursuant to Rule 37.5, the circuit court in *Roberts* was mandated to make express findings regarding Roberts's competency, and in doings so, the circuit court relied on studies that were over three years

8

SLIP OPINION

old.  In reviewing the circuit court's findings, we failed to note the age of the evaluations and affirmed the circuit court's finding of competency.  In our decision recalling the mandate, we held that the circuit court had failed to make a proper determination regarding competency, and that we had failed to uncover its error.

In contrast to the facts in *Roberts*, the circuit court in this instance was under no obligation to determine Ward's competency under Rule 37.5 prior to adjudicating his postconviction claims, as he did not waive his postconviction rights.  Because the court was not required to and did not make a finding on Ward's competency, we did not review his competency as part of *Ward IV*.  As a result, he has failed to point to an error that this court made or overlooked in its review of his postconviction proceedings appeal and has failed to show grounds to recall the mandate on this issue.

Ward's third argument is that we should recall the mandate in his postconviction appeal because his postconviction counsel failed to adequately address his mental issues during his postconviction hearing.  Specifically, Ward argues that his counsel failed to raise the issue of his competence at trial as well as in his postconviction hearing and also failed to argue that Ward was wrongly denied the assistance of an independent mental–health expert at trial.  Essentially, Ward's argument is that we should recall the mandate in his postconviction appeal because his counsel was ineffective.  Ward contends that the concurrence in *Wooten, supra* allows a claim for recalling the mandate based on ineffective assistance of counsel.

We do not entertain a claim for recalling the mandate based solely on allegations of

9

ineffective assistance of postconviction counsel. As we have held, recalling the mandate is an extremely narrow remedy reserved for unique situations; to enlarge it to allow typical claims of ineffective assistance of counsel would alter the nature of the relief entirely. In *Lee v. State*, 367 Ark. 84, 238 S.W.3d 52 (2006) (*Lee I*), we did recall the mandate where postconviction counsel was intoxicated and impaired during the course of the proceedings. Following the mandate recall, Lee received a new postconviction hearing. Thereafter, Lee petitioned this court to recall the mandate in his case again, arguing that his new postconviction counsel was ineffective. We explained that there is a fundamental difference in ordinary claims of ineffective assistance of counsel and the extraordinary circumstances presented in *Lee I*. *Lee v. State*, No. CR-08-160, slip op. at 2 (Ark. Sept. 18, 2008) (unpublished per curiam) (*Lee II*). Thus, because Ward's claims are that his counsel was merely ineffective, and not impaired or intoxicated as in *Lee I*, he has not presented legal grounds to recall the mandate.

Motion denied.

DANIELSON, BAKER and HART, JJ., dissent.

**PAUL E. DANIELSON, Justice, dissenting.** Because I am of the opinion that our decision in *Wooten v. State*, 2010 Ark. 467, 370 S.W.3d 475 is, and should remain, controlling precedent in this case, I respectfully dissent. This court strongly adheres to the doctrine of stare decisis. *See Hervey v. State*, 2011 Ark. 113. Indeed, it is well settled that "precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable." *Low v. Ins. Co. of N. America*, 364 Ark. 427, 431, 220 S.W.3d 670, 673 (2005).

10

SLIP OPINION

Our test is whether adherence to the rule would result in "great injury or injustice." *Id.*, 220 S.W.3d at 673. This is not such a case.

Applying the test here, it is not our adherence to the rule in *Wooten* that would result in great injury or injustice. To the contrary, it is the majority's overruling of that decision that has such a result—markedly so because this case involves a sentence of death. *See Anderson v. State*, 367 Ark. 536, 242 S.W.3d 229 (2006) (Imber, J., dissenting) (observing that a change in the law is particularly regrettable when it affects a person who is appealing his death sentence). I would follow what I believe to be our correct and well-reasoned decision in *Wooten* and would grant the instant motion. Accordingly, I dissent.

**KAREN R. BAKER, Justice, dissenting.** Today, rather than acknowledge our own error in Ward's postconviction case, the majority upends our precedents recognizing the unique procedural safeguards afforded to petitioners under a sentence of death. Ward's petition for postconviction relief was unverified. As a result, neither the circuit court that denied it, nor this court had jurisdiction to address his claims. I cannot agree with the majority's characterization of our decision rendered absent jurisdiction as enuring to Ward's benefit. Ward is under a sentence of death and should receive the same procedural safeguards afforded to every postconviction petitioner under that sentence. At the very least, he is entitled to a decision rendered by a court of competent jurisdiction. By failing to recall the mandate in this case the majority runs afoul of many precedents, in addition to *Wooten*. Because I would hold that a decision rendered without jurisdiction constitutes a breakdown

11

SLIP OPINION

in the appellate process sufficient to justify recall of the mandate, I would grant Ward's motion. Accordingly, I dissent.

Rule 37.1(c) requires a petitioner to verify his petition for postconviction relief. In cases where the petitioner did not receive a sentence of death, we have simply affirmed denial of postconviction relief if the petition was not verified and we have not afforded the petitioner a second chance to verify the petition and have his claims addressed by this court. *Collins v. State*, 365 Ark. 411, 414, 231 S.W.3d 717, 719 (2006). However, we have stated that there is no question that the death penalty is a unique punishment that demands unique attention to procedural safeguards. *Id.* (citing *Robbins v. State*, 353 Ark. 556, 354 Ark. 1, 114 S.W.3d 217 (2003)). This court has repeatedly set aside strict adherence to procedural rules in connection with postconviction relief out of concern for fairness in death-penalty cases. *Id.* One of the procedural safeguards we have afforded to persons under a sentence of death is the opportunity to verify an unverified petition for postconviction relief, rather than having a denial affirmed as a result of a procedural error. *Wooten v. State*, 2010 Ark. 467, 370 S.W.3d 475, is hardly unique in recognizing the procedural safeguards afforded to petitioners under a sentence of death. *See Collins*, *supra*; *see also Howard v. State*, 366 Ark. 453, 455, 236 S.W.3d 508, 509 (2006) (per curiam) ("Because Howard was sentenced to death, we set aside our strict adherence to procedural rules, and we do not dismiss his appeal out of hand. We do, however, remand the case to the circuit court for Howard to file a verified petition for postconviction relief and file a supplemental record with this court within fifteen days from

SLIP OPINION

the date of this order.").

Even more troubling is the fact that this court has repeatedly stated that an unverified Rule 37 petition deprives the circuit court, and consequently the appellate court, of jurisdiction. *Adkins v. State*, 2014 Ark. 349; *Branning v. State*, 2014 Ark. 256, at 4 ("We have held that a circuit court lacks jurisdiction to consider arguments raised in an unverified Rule 37.1 petition."); *Martin v. State*, 2012 Ark. 312; *Williamson v. State*, 2012 Ark. 170; *Stephenson v. State*, 2011 Ark. 506. This is because Rule 37.1(d) requires dismissal of an unverified petition. *Stewart v. State*, 2014 Ark. 85, at 2 (per curiam) ("Rule 37.1(d) requires that the circuit clerk reject an unverified petition and that the circuit court or the appellate court must dismiss a petition that fails to comply with Rule 37.1(c).)"; *see also Paige v. State*, 2013 Ark. 135; *Hatton v. State*, 2012 Ark. 286 (per curiam); *Keck v. State*, 2013 Ark. 139. It is axiomatic that when the circuit court lacks jurisdiction, the appellate court also lacks jurisdiction. *Stewart*, 2014 Ark. 85; *Paige*, 2013 Ark. 135; *Williamson*, 2012 Ark. 170; *Talley v. State*, 2011 Ark. 497 (per curiam); *Gilliland v. State*, 2011 Ark. 480 (per curiam).

I acknowledge that the above cases discussing jurisdiction are cases applying Rule 37.1, whereas petitions filed by persons under a sentence of death must comply with Rule 37.5. However, Rule 37.5 explicitly provides that the provisions of Rules 37.1 shall apply to a petition for postconviction relief filed by a person under sentence of death, unless otherwise provided for in the rule. Ark. R. Civ. P. 37.5(a). Rule 37.1(d) provides that the circuit clerk "shall not accept for filing" any petition that is not verified. Likewise, the rule provides that

SLIP OPINION

the circuit court or any appellate court shall dismiss any petition that fails to comply with the verification requirements. Ark. R. Crim. P. 37.1(d). There is nothing in Rule 37.5 that changes the verification requirements of Rule 37.1, nor does it change the dismissal requirement under 37.1(d). The dismissal requirement of 37.1(d) is the reason why this court has recognized an exception for persons under a sentence of death who file unverified petitions; otherwise, this court would be obligated, by the text of the rule, to dismiss those unverified petitions without addressing the postconviction claims of those facing the ultimate punishment. Without such a grace, the dismissal of an unverified petition might foreclose the possibility of review entirely. Ark. R. Crim. P. 37.5(e); *see also Jackson v. State*, 343 Ark. 613, 617, 37 S.W.3d 595, 597 (2001) (holding that in a capital case involving the death penalty and involving Rule 37.5, the court must address whether due process requirements of fundamental fairness compel the circuit court to address untimely Rule 37 petitions on their merits).

The majority relies on *Howard, supra* for the proposition that because we reviewed Ward's Rule 37 petition and did not dismiss it outright, he has received all of the process he is due. *Howard* stands for no such proposition. In *Howard*, the petitioner, who was under a sentence of death, filed a verified Rule 37.5 petition and then filed an unverified amended petition. *Howard*, 366 Ark. at 454, 236 S.W.3d at 508. The circuit court dismissed the unverified amended petition and the petitioner appealed. This court remanded the petition for verification. We did not reach the merits of the petition, nor did we endorse the view that we could simply review an unverified petition and thereby satisfy our procedural rules.

14

*Id.* at 455, 236 S.W.3d at 509. Instead, we stated that in a death-penalty case the failure to verify was "clearly" a breakdown in the appellate process. *Id.* Moreover, the majority fails to acknowledge that actions taken by a court without jurisdiction are null and void—no matter how much process has occurred. *See, e.g., Villines v. Harris*, 362 Ark. 393, 398, 208 S.W.3d 763, 767 (2005).

Moreover, I do not understand the majority's assertion that they are merely following in the steps of precedents holding jurisdictional issues in abeyance in death penalty cases. First, by overruling *Wooten*, the majority actually is *depriving* Ward of the same procedure that has been afforded to others sentenced to death. Second, the cases cited by the majority all recognize that there is a jurisdictional bar to hearing a Rule 37 petition that does not adhere to filing requirements under the rules. While we have previously set aside such jurisdictional bars in death penalty cases, the fact remains that we have treated the time requirements and the verification requirement as jurisdictional.

Finally, I note that our precedents holding that verification requirements are jurisdictional in nature are hardly novel. *See Pattillo v. Toler*, 210 Ark. 231, 233, 196 S.W.2d 224, 225 (1946) (finding that when a rule proscribes the procedure to vacate or modify the judgment after the term at which it was entered has concluded, and that rule requires that the complaint or petition be verified by affidavit, the verification is a jurisdictional requirement) (citing *Merriott v. Kilgore*, 200 Ark. 394, 139 S.W.2d 387, *First Nat'l Bank of Manchester, Iowa v. Dalsheimer*, 157 Ark. 464, 248 S.W. 575).[1] While I acknowledge that *Patillo* does not

---

[1]*Patillo* was decided under superseded Ark. Stat. Ann. § 27-1105 (Repl. 1962), which required that a complaint, answer and reply be verified. We no longer require

pertain to Rule 37 cases, the legal concept that verification requirements are jurisdictional in nature is not something that has arisen solely in the present context.

Because the majority errs by refusing to recognize that Ward's unverified petition constitutes a breakdown in the appellate process that rendered this court without jurisdiction to determine the merits of his Rule 37 petition, I respectfully dissent.

HART, J., joins.

*Jennifer Horan*, Federal Defender, by: *Josh Lee*; and *Joseph W. Luby*, Death Penalty Litigation Clinic, for petitioner.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for respondent.

---

verification of all pleadings. *See* Ark. R. Civ. P. 11 rptr. n.2.