Gary T. CLOIRD, *a/k/a* Saba Ka Makkali,
*a/k/a* Simba Kali *v.* STATE of Arkansas

CR 93-284 99 S.W.3d 419

Supreme Court of Arkansas
Opinion delivered March 6, 2003

*Jeff Rosenzweig,* for petitioner.

*Mark Pryor,* Att'y Gen., by: *Brad Newman,* Ass't Att'y Gen., for respondent.

DONALD L. CORBIN, Justice. Petitioner Gary Cloird, also known as Saba Ka Makkali and Simba Kali, was convicted in the Jefferson County Circuit Court of the crimes of rape and theft of property, which occurred on January 25, 1992, and was sentenced to a total of thirty-five years' imprisonment. This court affirmed his convictions and sentence in *Cloird v. State,* 314 Ark. 296, 862 S.W.2d 211 (1993) (*Cloird I*). Following our decision, Cloird filed a petition for postconviction relief in the trial court, pursuant to Ark. R. Crim. P. 37. The trial court dismissed the petition on the ground that it was untimely, and this court affirmed the dismissal in an unpublished opinion. *See Cloird v. State,* CR 95-7, slip op. (Ark. February 27, 1995) (*per curiam*) (*Cloird II*). Cloird subsequently filed a petition for a writ of *habeas corpus* in the Lincoln County Circuit Court, the county in which he is incarcerated. He asserted in his petition that the Jefferson County Circuit Court lacked jurisdiction to try him on the charge

of rape, because the trailer where the rape occurred was actually located in Arkansas County. The trial court dismissed the petition on the ground that Cloird had not met his burden of proof. This court summarily affirmed the trial court's ruling on the ground that Cloird's abstract was flagrantly deficient. *See Cloird v. State,* 00-166, slip op. (Ark. October 11, 2001) (*per curiam*) (*Cloird III*).

 Four months after our decision, Cloird filed the instant petition in this court, seeking a writ of *habeas corpus,* as well as permission for leave to file a petition for writ of error *coram nobis* in the trial court. This court has original jurisdiction to hear petitions for extraordinary writs, pursuant to Ark. Const. Amend. 80, § 2(E). *See also Simpson v. Sheriff of Dallas County,* 333 Ark. 277, 968 S.W.2d 614 (1998) (*per curiam*). We remanded the *habeas* matter to the trial court for a factual determination as to where the trailer in which the rape occurred was actually located. *See Cloird v. State,* 349 Ark. 33, 76 S.W.3d 813 (2002) (*per curiam*) (*Cloird IV*).[1] We stated in that opinion that once the trial court made its factual determination, we would render a final disposition on the *habeas* matter.

On remand, the parties stipulated that the trailer in question was located at 402-A Levinson Street, in the town of Humphrey, which is situated in both Jefferson and Arkansas Counties. The parties stipulated further that the address of the trailer was in that part of Humphrey that sits in Arkansas County. Based on that stipulation, the trial court entered an order finding that the rape at the trailer occurred in Arkansas County. For the reasons set out below, we now deny the writ.

Before we reach the merits of Cloird's jurisdiction claim, we must address the question raised by the trial court, on remand, as to why this court is entertaining Cloird's second *habeas* petition after having affirmed the denial of the first *habeas* petition. Both the trial court and the State felt that the first affirmance was the law of the case on this issue. In *Cloird IV,* we explained that the doctrine of law of the case was not applicable because the issue

---

[1] We also granted permission for Cloird to file a petition for a writ of error *coram nobis* in the trial court. This appeal involves only the *habeas* issue.

raised in the *habeas* petition was lack of jurisdiction, which, we pointed out, may be raised at any time. On remand, the trial court expressed considerable concern that our holding would effectively allow the jurisdiction issue to be raised repeatedly by the same prisoner in multiple *habeas* petitions. We now take this opportunity to clarify our position on this issue.

The doctrine of law of the case ordinarily arises in the case of a second appeal and requires that matters decided in the first appeal be considered concluded. *Camargo v. State*, 337 Ark. 105, 987 S.W.2d 680 (1999). Thus, the doctrine dictates that a decision made in a prior appeal may not be revisited in a subsequent appeal. *Green v. State*, 343 Ark. 244, 33 S.W.3d 485 (2000). The purpose of the doctrine is to maintain consistency and avoid reconsideration of matters once decided during the course of a single, continuing lawsuit. *Id.* However, matters that have not been decided, explicitly or implicitly, do not become law of the case merely because they could have been decided. *Camargo*, 337 Ark. 105, 987 S.W.2d 680. An example of when a matter has not been decided is when it is procedurally barred from appellate review. *See Colbert v. State*, 346 Ark. 144, 55 S.W.3d 268 (2001); *Green*, 343 Ark. 244, 33 S.W.3d 485.

In *Colbert*, this court rejected the State's assertion that the evidentiary issue raised by the appellant was barred by the law-of-the-case doctrine. This court explained: "Mr. Colbert was procedurally barred in his first appeal from challenging the admission of evidence that supported his simultaneous-possession conviction. Thus, because that issue was not before this court in the first appeal, it was not expressly or implicitly determined in *Colbert I*." 346 Ark. at 147, 55 S.W.3d at 271 (fn 1).

Similarly, in *Green*, 343 Ark. 244, 33 S.W.3d 485, this court concluded that the doctrine of law of the case did not apply where, in the previous appeal, this court held that the appellant's challenge to the trial court's comment on a witness's credibility was procedurally barred because the appellant failed to raise an objection at trial. This court explained:

> Therefore, this court's holding did not turn on the trial court's comment but upon failure to preserve. The court's decision

would have been the same in the absence of the statement characterizing the trial judge's comments. *The opinion did not reach the issue of the trial court's comment and hence was not actually decided. No adjudication took place that would bind this court now.* Consequently, we hold that the law-of-the-case doctrine does not apply to this appeal.

*Id.* at 251-52, 33 S.W.3d at 490 (emphasis added).

■ Here, this court did not reach the merits of Cloird's jurisdiction argument in the first appeal of the *habeas* petition. We stated that we could not decide the jurisdiction issue because Cloird had failed to supply us with the pleadings, documents, and testimony necessary to review the issue. We explained that due to the flagrantly deficient abstract, we were "*unable* to determine whether the trial court lacked jurisdiction over the cause of rape." *Cloird III*, slip op. at 2 (emphasis added). No adjudication took place on the issue of jurisdiction that would prohibit us from considering the issue now. Accordingly, the doctrine of law of the case does not apply.

■ Before we leave this issue, we must address the holding in *McAdams v. Automotive Rentals, Inc.*, 324 Ark. 332, 924 S.W.2d 464, *cert. denied*, 519 U.S. 1013 (1996), which runs contrary to the holdings in *Colbert* and *Green*. In *McAdams*, this court held that the prior appeal to this court, which was summarily affirmed due to a flagrantly deficient abstract, was the law of the case and barred relitigation of any of the issues that were or could have been addressed in the first appeal. We believe that the more sound reasoning dictates that we apply the principle set out in *Colbert* and *Green*, that the doctrine of law of the case does not bar our consideration of an issue unless there has been an adjudication of that issue in the first appeal. Accordingly, we overrule *McAdams* to the extent that it conflicts with this principle. We turn now to the merits of Cloird's claim.

Cloird argues that because the rape for which he was charged occurred in Arkansas County and because he was not convicted of the charge of kidnapping that occurred at the nightclub in Jefferson County, the Jefferson County Circuit Court lacked jurisdiction to try him. To fully understand the issue, we must examine

the facts of the case, which reveal a continuous criminal episode that began in Jefferson County and continued into Arkansas County.

The record reflects that on the evening of January 24, 1992, the Pine Bluff Police Department received a report that a van had been stolen from a local car dealership. Later that same evening, Barbara Smith met Kurt Morris and Roosevelt Burton at a Pine Bluff nightclub called P.J.'s. As they were leaving, Ms. Smith accepted a ride from Morris and Burton to another nightclub, called Bad Bob's. Burton would later tell police that one of the guys he was with told him that they intended "to run a train on her." Morris went to get the car, while Ms. Smith and Burton waited outside the club's front door. When Morris pulled up, Burton opened the door to allow Ms. Smith to get in the backseat. Burton then surprisingly slid into the backseat next to her. Ms. Smith sensed that something was wrong, and she immediately attempted to open the other door and get out of the car. By that time, however, Morris was pulling out of the parking lot. To prevent her from getting out of the car, Burton took hold of Ms. Smith by the hair and pushed her down into the seat. Ms. Smith then began screaming.

Ms. Smith continued to scream and struggle with Burton, as Morris drove the car. At one point, Ms. Smith opened the door and attempted to jump out of the car, but the door slammed shut due to the speed that the car was traveling. Burton again took hold of her hair and pulled her back down into the seat. This time, however, Burton forced her to perform oral sex on him. When Burton became angry because she was not doing it right, Morris pulled the car off onto a dark, dirt road and stopped. The two men then took turns forcing her to have oral, vaginal, and anal sex.

They then drove from Jefferson County into that part of the city of Humphrey that is located in Arkansas County, specifically to Morris's trailer. The two men then dragged her inside the trailer, where she was physically and sexually assaulted. Ms. Smith recounted numerous instances of rape, committed by several individuals in three different rooms of the trailer. Among those she

identified as her rapists was Cloird. Throughout her confinement, Ms. Smith begged the men to let her go or take her home, but they refused. Instead, they continued to terrorize her by raping her, making her perform oral sex until she vomited, and then making her drink her own vomit. At one point, one of the men put a gun to Ms. Smith's head and pulled the trigger. Fortunately, there was no round in the chamber. Finally, the men released Ms. Smith the next day, and Morris drove her back to the city limits of Pine Bluff and released her.

Cloird was charged by information in the Jefferson County Circuit Court with having committed the crimes of kidnapping, rape, and theft of property. The amended information specifically reflected that Cloird was charged as an accomplice, along with Morris, Burton, and Bobby Foster, to the crimes of rape and kidnapping. Cloird does not deny the evidence that placed him at the scene of the trailer, where Ms. Smith was held against her will and repeatedly raped. However, he asserts that there was no evidence placing him at the scene of her abduction in Jefferson County. Thus, he contends that Jefferson County had no jurisdiction to try him as an accomplice to rape and kidnapping. He is wrong for two reasons.

First, Cloird is legally mistaken when he contends that he cannot be charged as an accomplice if he was not physically present at the crime scene. A person is an accomplice when he or she renders the requisite aid or encouragement to the principal with regard to the offense at issue. *See Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002) (*substituted opinion on denial of rehearing*). It is not necessary that the accomplice actually be present at the scene of the crime or physically commit the crime, so long as the accomplice aided, assisted, or encouraged the crime. *Id.* "A participant cannot disclaim responsibility because he did not personally take part in every act that went to make up the crime as a whole." *Id.* at 31, 86 S.W.3d at 878 (citing *Crutchfield v. State*, 306 Ark. 97, 812 S.W.2d 459 (1991), and *Parker v. State*, 265 Ark. 315, 578 S.W.2d 206 (1979)).

Second, Cloird is factually mistaken when he asserts that there is no evidence placing him at the scene of the victim's

abduction in Jefferson County. The record reflects that during the night in question, Cloird and Foster stole a van from Smart Chevrolet in Pine Bluff and drove it to the trailer in Humphrey. Pine Bluff Detective Susie Powell testified that Cloird admitted to her that he and Foster had stolen the van from the dealership and drove it to a trailer in Humphrey. The victim, Ms. Smith, testified that when she was abducted by Morris and Burton from the parking lot of P.J.'s, she noticed a van behind Morris's car. Tremaine Parker, a very reluctant witness for the State, testified that Cloird told him that he stole the van and drove it first to P.J.'s, and then to the trailer in Humphrey. Based on these facts, Jefferson County had jurisdiction to try Cloird.

In Arkansas, jurisdiction is statutorily provided for in Ark. Code Ann. § 16-88-105(b) (1987), which states: "The local jurisdiction of circuit courts and justices' courts shall be of offenses committed within the respective counties in which they are held." *See also* Ark. Const. art. 2, § 10 (providing in part that "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by impartial jury of the county in which the crime shall have been committed[.]") An offense that occurs in more than one county is governed by Ark. Code Ann. § 16-88-108(c) (1987), which provides: "Where the offense is committed partly in one county and partly in another, or the acts, or effects thereof, requisite to the consummation of the offense occur in two (2) or more counties, the jurisdiction is in either county." The purpose of this section is to prevent miscarriages of justice by extending the lines of jurisdiction beyond the limits prescribed by the common law; thus, this section is remedial in nature and must be liberally construed. *State v. Osborn*, 345 Ark. 196, 45 S.W.3d 373 (2001) (citing *Hill v. State*, 253 Ark. 512, 487 S.W.2d 624 (1972)). Moreover, the crime of kidnapping is governed by its own jurisdictional provision, Ark. Code Ann. § 16-88-110(a) (1987), which provides that where a kidnapping occurs in more than one county, "the jurisdiction shall be in the county in which the kidnapping, seizing, or confining was committed, or in any county in which it was continued."

Our cases have consistently recognized that when a crime begins in one county and proceeds to culmination in

another county, both counties have jurisdiction to prosecute the crime. For example, in *Ellis v. State*, 291 Ark. 72, 722 S.W.2d 575 (1987) (*per curiam*), this court denied relief under Rule 37 where the defendant alleged that Jefferson County lacked jurisdiction to try him for kidnapping and aggravated robbery. Relying on Ark. Stat. Ann § 43-1414, now codified as section 16-88-108(c), this court held: "The offense of kidnapping in this case occurred in Jefferson County and culminated in the aggravated robbery of the victim in Pulaski County. Under these facts, Jefferson County had jurisdiction to try the petitioner for both offenses." *Id.* at 73, 722 S.W.2d at 576 (citing *Cozzaglio v. State*, 289 Ark. 33, 709 S.W.2d 70 (1986)).

The facts in *Cozzaglio*, 289 Ark. 33, 709 S.W.2d 70, upon which this court relied in *Ellis*, were similar to those in the present case. There, the kidnapping occurred in Washington County, continued into Madison County, and culminated with the victim's rape in Madison County. The defendant was tried and convicted of the kidnapping in Washington County, and then tried and convicted of the rape in Madison County. On appeal, the defendant argued that the first trial court had erred in refusing to join the offenses in one trial. This court agreed and reversed, on the ground that both counties had jurisdiction over both offenses. *See also Wilson v. State*, 298 Ark. 608, 770 S.W.2d 123 (1989) (reiterating the law that separate crimes committed in one continuous episode in more than one county may be tried in either county and require joinder in one county if the defendant requests it).

Similarly, in *Patterson v. State*, 306 Ark. 385, 815 S.W.2d 377 (1991), this court held that although the murder occurred in Greene County, Craighead County had jurisdiction to try the appellant because some of the acts requisite to the murder occurred in Craighead County. *See also Pilcher v. State*, 303 Ark. 335, 796 S.W.2d 845 (1990) (holding that both Saline County and Grant County had jurisdiction to try the appellant for murder, where the actual killing occurred in one county, but the acts requisite to the consummation of the murder and the subsequent disposal of the body occurred in the other county); *Thrash v. State*, 291 Ark. 575, 726 S.W.2d 283 (1987) (holding that where the

murder and robbery occurred in one county, but the plan was hatched in another county and the body was subsequently returned to that other county, both counties had jurisdiction to try the appellant); *Bottom v. State*, 155 Ark. 113, 244 S.W. 334 (1922) (holding that the State has the right to elect in which county the offense may be prosecuted where the jurisdiction is concurrent under the statutes, and until the final judgment, which operates as a bar to further prosecution in either county, the State's right of selection of the forum continues).

◼ Here, the facts clearly establish that Ms. Smith was kidnapped from the parking lot of P.J.'s, a nightclub in Jefferson County, and eventually driven to a trailer in Arkansas County. Along the way, Ms. Smith was repeatedly raped by Morris and Burton. After she was abducted by Morris and Burton, Ms. Smith noticed a van behind Morris's car. Cloird confessed to police that he and Foster stole a van that night from a Pine Bluff dealership and drove it to Humphrey. Cloird also told Tremaine Parker that after he and Foster stole the van, they drove it to P.J.'s and then to Morris's trailer in Humphrey. Once at the trailer, the perpetrators continued to restrain Ms. Smith against her will, and Morris, Burton, and Cloird repeatedly raped her. This evidence clearly demonstrates that the crimes against Ms. Smith were committed in a single criminal episode that began in Jefferson County and culminated in Arkansas County. Under our statutes and case law, either county had jurisdiction to try Cloird.

◼ Finally, we disagree with Cloird's argument that because he was acquitted of the crime of kidnapping, Jefferson County lacked jurisdiction to try him for the rape. As set out above, the evidence established that both counties had jurisdiction to try him for the crimes. The fact that the jury ultimately concluded that Cloird was not guilty of the offense of kidnapping has no bearing on the trial court's power to try him. We thus deny the writ of *habeas corpus*.

IMBER, J., not participating.