Rickey D. NEWMAN *v.* STATE of Arkansas

CR 05-701                                                  211 S.W.3d 543

Supreme Court of Arkansas
Opinion delivered August 3, 2005

*Jenniffer M. Horan* and *Bruce David Eddy*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

P ER CURIAM. The State's motion to dismiss is granted.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. The state courts have thoroughly reviewed Rickey Dale Newman's case in a forty-three page opinion handed down on May 22, 2003. *Newman v. State*, 353 Ark. 258, 106 S.W.3d 438 (2003). Among the many other issues raised at his trial, Newman objected to having appointed counsel. We agreed with Newman and also agreed with Newman's additional request to represent himself. At the same trial, the State presented expert testimony that Newman was mentally fit to stand trial. Newman was convicted of capital murder and sentenced to death. Under Ark. R. App. P. – Crim. 10, our court conducted an automatic review of his conviction and found no reversible error.

After this court's mandate was issued, the trial court held a hearing required by Ark. R. Crim. P. 37.5(b), and it advised Newman of his postconviction rights, including his right to have an attorney. As he had done at his initial trial, he waived his right to have an attorney and any right to pursue postconviction and habeas proceedings. Nonetheless, our court instructed the trial court to conduct another evaluation of Newman for determining whether he was currently competent to proceed with the hearing, as required under Rule 37.5.[1] The trial court subsequently held its hearing, and, on remand, the trial court asked Newman if he

---

[1] The remand was in part based on Newman's mentioning that he was under the influence of medication for his mental health, although he stated that it did not impair his

understood why another hearing was being held. He said, "The last time I was here, I waived Rule 37.5, and the supreme court found me not competent to do it, and they sent me to have a new mental evaluation. I'm here to waive it again." Newman further testified with clarity as follows: "I take full responsibility for what I have done. And I think final justice should be, must be done for Marie Cholette [the victim] and her family. I stand before this court and waive Rule 37.5. I waive all my rights to a trial. And I respectfully ask for an execution date."

Based on the above and other testimony given by Newman and other state evidence offered by Dr. Charles Mallory, the trial court entered the following detailed order:

(a) the Defendant has the capacity and is clearly competent to understand the choice between life and death; and,

(b) the Defendant has the capacity and is clearly competent to knowingly and intelligently waive any and all rights to pursue postconviction relief pursuant to Rule 37.5 of the Arkansas Rules of Criminal Procedure or habeas corpus relief in federal court; and,

(c) the Defendant has the capacity and is clearly competent to knowingly and intelligently reject his right to have counsel appointed at no charge to him to pursue on his behalf postconviction relief pursuant to Rule 37.5 of the Arkansas Rule of Criminal Procedure; and,

(d) the Defendant has unequivocally expressed his desire to freely, voluntarily, knowingly, and intelligently reject his right for appointment of an attorney at no cost to him and waived his right to pursue postconviction relief pursuant to Rule 37.5 of the Arkansas Rules of Criminal Procedure; and,

(e) the Defendant has completely demonstrated he fully understands the legal consequences of (i) his waiver of his right to have an attorney appointed to him, (ii) the waiver of his right to pursue postconviction relief pursuant to Rule 37.5 of the Arkansas Rules of Criminal Procedure, and [(iii)] the waiver to pursue habeas corpus relief in federal court; and

judgement. On remand, both Newman and Dr. Charles Mallory of the State Mental Health Hospital agreed that Newman was no longer taking psychotropic medication.

(f) the Defendant has unequivocally expressed his desire for his death sentence to be carried out by the State of Arkansas and to die by lethal injection.

The trial court returned Newman's case to us, and we affirmed the trial court's decision.

After this court's mandate was issued, federal public defenders filed a motion in the state proceedings, requesting that this court recall its mandate; they further stated that they had been appointed by the federal district court to represent Newman.[2] They alleged that Newman's "common-law aunt," Betty Moore[3], sought to intervene in this matter as Newman's next friend, and that Newman was mentally retarded and could not be executed in violation of the prohibition set out in *Atkins v. Virginia*, 536 U.S. 304 (2002). This court continued its temporary stay of execution and asked the federal public defenders to brief four legal issues. However, the federally-appointed attorneys later filed a motion to vacate any briefing schedule, asserting that Newman had changed his mind to waive counsel, and instead had authorized Federal Public Defenders Julie Brain and Bruce Eddy to raise whatever claims or defenses were available to him. His statement was unsworn. The attorneys alleged that, because Newman was now acting in his own right, he no longer needed Ms. Moore as next friend to proceed with his Rule 37 postconviction proceeding.

About three months later, Newman filed an affidavit whereby he purportedly fired the two federally-appointed attorneys; he again asked to be put to death because he "murdered Marie Cholette in cold blood and set her up to do so." The federally-appointed attorneys filed a petition for writ of habeas corpus on Newman's behalf, although Newman and the two federal public defenders' requests appeared to be at odds. After the two appointed attorneys filed their petitions for habeas relief, the trial court held another hearing and again found Newman was not mentally retarded and was competent to understand the consequences of his decisions. Newman, in open court, fired the two attorneys. The trial court then ruled the federal public defenders could not represent Newman in any state proceedings. The trial

---

[2] The federally-appointed attorneys did not mention or question Newman's competency to make this belated change of mind to be represented by these two public defenders and for them to plead his retardation or innocence.

[3] The record reflects that Ms. Moore was not actually a relative of Newman's.

judge entered his orders on these matters and also denied the federal public defenders' motion for reconsideration. Our court upheld the trial court's decisions, including the public defenders' motion for reconsideration, and also granted Newman's pro se motion to dissolve this court's stay of execution.

The federal public defenders simply have no standing in this state proceeding because no authority supports such action.[4] A federal district court's authority to appoint counsel to capital defendants is found in 21 U.S.C. § 2254. Federally-appointed counsel is also available to assist a qualifying prisoner for judicial proceedings ancillary to a federal habeas corpus petition. *See* 28 U.S.C. § 848(q)(8). Federal habeas relief is not available to any claim for which available state remedies have not been exhausted. *See* 28 U.S.C. § 2254(b)(1)(A). If such relief were available, there would be no real need for this state's postconviction remedies provided in our Rule 37. The State ably makes this point clear by citing and discussing the case of *In re Lindsey*, 875 F.2d 1502 (11th Cir. 1989).

In *Lindsey*, the Eleventh Circuit was called upon to determine "whether, in the meaning of subsection 848(q)(4)(B), one may be said to be 'proceeding under section 2254' with respect to a claim for which he has not exhausted all state remedies. We think not." The court reasoned that, because habeas corpus relief is unavailable when a prisoner has not exhausted his or her available state remedies, a proceeding in state court to exhaust those remedies is not contemplated by § 848(q)(4)(B) or (q)(8). *Lindsey,* 875 F.2d at 1506. This is so because:

> Acceptance of [the proposed] view of a state prisoner's rights under subsection 848(q) would have the practical effect of supplanting state-court systems for the appointment of counsel in collateral review cases. Adherence to [that] view would encourage state prisoners to ignore, as [the appellant] has here, the proper sequence, developed from concerns for federalism, for seeking collateral relief from state-court judgments in death-penalty cases.

*Id.* Accepting that proposition, which is espoused by the federal public defenders, would allow "state inmates, for no reason other than to gain the assistance of federally appointed counsel . . . throughout all

---

[4] While law of the case appears to have attached and Newman had clearly waived his postconviction rights and was mentally competent to do so, I need not address that issue. *See Cloird v. State*, 352 Ark. 190, 99 S.W.3d 419 (2003).

stages of collateral review (both state and federal), [to] ignore the exhaustion requirement and, before seeking state remedies, futilely file for federal *habeas* relief." *Id.*

The Eleventh Circuit additionally rejected the claim that a proceeding to exhaust state remedies is a matter "ancillary" to a federal habeas corpus proceeding. Section 2254(b)(1)(A) requires a prisoner to exhaust available state remedies prior to obtaining federal relief. "[T]hat requirement is based in principles of federalism that belie the notion that an inmate pursu[ing] state collateral review is seeking relief under section 2254." *Id.* at 1508. In fact, "[t]he legislative history . . . suggests that 'ancillary matters' are limited to proceedings comprehended within the action for which the appointment was made." *Id.*

In *Hill v. Lockhart*, 992 F.2d 801 (8th Cir. 1993), the Eighth Circuit adopted *Lindsey's* reasoning and holding , ruling that "the references to judicial . . . proceedings in § 848(q)(8) do not encompass any proceedings convened under the authority of a State." *Hill*, 992 F.2d at 803. The Eighth Circuit further ruled that it "agree[s] with Lindsey's analysis in cases of unexhausted claims, where comity mandates that state judicial proceedings precede the seeking of federal habeas relief." *Id. Lindsey* has been followed by the Fifth and Sixth Circuits as well. *See, e.g., Sterling v. Scott*, 57 F.3d 451 (5th Cir. 1995); *House v. Bell*, 332 F.3d 997 (6th Cir. 2003).

The State's analysis fairly and clearly supports the trial court and our court's decisions that the federally-appointed counsel have no standing in this matter, nor can they force Newman to accept their representation after Newman duly and properly rejected it. *See Franz v. State*, 296 Ark. 181, 754 S.W.2d 839 (1988).

Other clear reasons exist to deny the federally-appointed attorneys any relief in this proceeding. For example, even if the attorneys were allowed to proceed as Newman's attorneys (over his objection), the trial court's decision was entered on February 25, 2004, making any petition for Rule 37 relief due to be filed on May 25, 2004; the petition filed in this case was February 1, 2005, which was well beyond the 90-day limitation required under Rule 37. *See* Ark. R. Crim. R. 37.5(e).[5]

---

[5] Our court has stated that, while time limits for filing postconviction relief is jurisdictional, in cases involving death, the court will allow a late filing where fundamental

For the reasons discussed above, I concur with the court's decision granting the state's motion to dismiss.

fairness dictates. *See e.g. Porter v. State*, 339 Ark. 15, 2 S.W.3d 73 (1999). The court has never allowed a Rule 37 petitioner to ignore the jurisdictional requirement where the delay was due to his own making. *See Engram v. State*, 360 Ark. 140, 200 S.W.3d 367 (2004).