Darrell Wayne HILL *v.* STATE of Arkansas

In Re the Federal Public Defender's Representation of
Defendants Sentenced to Death in State Court

CR 00-1210                                        215 S.W.3d 589

Supreme Court of Arkansas
Opinion delivered October 13, 2005

*Wilson, Engstrom, Corum & Coulter*, by: *Stephen Engstrom*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice.   On May 20, 2005, the Federal Public Defender (FPD) filed a motion to recall the mandate in the case of Darrell Wayne Hill. This court denied the motion. *See Hill v. State*, 362 Ark. 659, 210 S.W.3d 123 (2005) (*per curiam*). In the *Hill per curiam* opinion, we raised the question of "by what authority the Federal Public Defender [was] representing defendants in capital cases in state court." *Id*. We listed four cases where this had happened: *Engram v. State*, CR99-928; *Hill v. State*, CR00-1210; *Nance v. State*, CR99-365; and *Newman v. State*, CR03-1257. All four cases involved death sentences for the defendants. We requested that the FPD advise this court by formal response of its authority for representing these defendants. *Hill, supra*. Thereafter, the FPD filed its Statement of Authority, and the State also filed its Response.

On August 3, 2005, this court granted the State's motion and dismissed without opinion the FPD's Rule 37 petition in *Newman v. State.* Justice Glaze of this court issued a concurring opinion wherein he agreed with the State that the FPD had no standing to appear on behalf of Newman on a Rule 37 petition. *See Newman v. State,* 363 Ark. 199, 211 S.W.3d 543 (2005) (Glaze, J. concurring).

A briefing schedule was set by this court in connection with the *Hill per curiam* and briefs were filed by the parties, followed by oral argument before this court. The arguments made in favor of FPD's authority can best be summarized as follows:

- Federal statutes and a federal district court order (General Order No. 49) give the FPD plenary authority to represent indigent capital defendants in state court.

- Under *Courtney v. Butt,* 264 Ark. 475, 572 S.W.2d 407 (1978), state courts cannot invoke state rules to question or deny legal representation provided by the federal government.

- Attorneys with the FPD are licensed to practice in Arkansas and can represent any clients of their choosing.

- After its appointment by the federal district court to represent capital defendants in federal *habeas corpus* matters, any necessary representation in state court proceedings is an ancillary matter.

- No federal case has ever held that the FPD cannot represent indigent defendants in state court.

- The status of the FPD, as counsel for indigent capital defendants, is similar to any *pro bono* or retained representation of criminal defendants.

- Whether federal funds are used for this purpose should be of no moment for state courts.

- Arkansas has no rule governing appointment of counsel for indigent capital defendants after the mandate has issued in state court, and as a result, FPD representation is reasonably necessary.

The State responds and makes these salient points:

- The FPD has not been appointed to represent these indigent capital defendants under Arkansas Rule of Criminal Procedure 37.5.

- Under *In re Lindsey*, 875 F.2d 1502 (11th Cir. 1989), the FPD has no authority to appear in state court until appointed by state court to do so.

- Every federal court faced with the issue of FPD representation of indigent defendants in state court has held that FPD representation is limited to federal proceedings.

- The FPD should not receive federal funds for representing indigent defendants in state court under principles of comity and federalism.

We believe a historical perspective is necessary for an understanding of this matter. In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* Pub. L. No. 104-132 (1996). By this act, Congress chose to restrict federal *habeas corpus* review in exchange for the states' appointing competent counsel for indigent capital defendants for purposes of state post-conviction review. *See* Burke W. Kappler, *Small Favors: Chapter 154 of the Antiterrorism and Effective Death Penalty Act, the States, and the Right to Counsel*, 90 J. CRIM. L. & CRIMINOLOGY 467, 469 (2000).

In 1997, the Arkansas General Assembly enacted Act 925 of 1997 in response to the AEDPA. Act 925 is now codified at Ark. Code Ann. § 16-91-201 to 206 (Supp. 2005). The General Assembly stated the purpose behind Act 925 as being compliance with the AEDPA "in an effort to obtain the benefits of that act concerning time limitations in which federal habeas corpus proceedings and appeals must be considered and decided . . . ." Ark. Code Ann. § 16-91-204 (Supp. 2005).

Also in 1997, this court adopted Arkansas Rule of Criminal Procedure 37.5 in order to "opt in" to the benefits of AEDPA by setting criteria for appointed counsel for indigent capital defendants sentenced to death. We subsequently stated the purpose behind Rule 37.5 in our case law:

Rule 37.5 evolved from Act 925 of 1997, now codified at Ark. Code Ann. §§ 16-91-201 to -206 (Supp. 1999), where the General

Assembly expressly noted that the intent of the Act is to comply with federal law by instituting a comprehensive state–court review. *See* section 16–91–204; *Porter v. State*, 332 Ark. 186, 964 S.W.2d 184 (1998) (*per curiam*). The purpose of a meaningful state review is to eliminate the need for multiple federal *habeas corpus* proceedings in death cases. *Id.* Thus, "in death cases where a Rule 37 petition is denied on procedural grounds, great care should be exercised to assure that the denial rests on solid footing." *Id.* at 188–89, 964 S.W.2d at 185.

*Echols v. State*, 344 Ark. 513, 517, 42 S.W.3d 467, 469 (2001). *See also Robbins v. State*, 354 Ark. 1, 114 S.W.3d 217 (2003); *Wooten v. State*, 338 Ark. 691, 1 S.W.3d 8 (1999). Hence, for an attorney to be appointed by an Arkansas state court to represent an indigent capital defendant who is sentenced to death, that attorney must satisfy the criteria set out in Rule 37.5.

To establish its authority to represent indigent state capital defendants in state courts, the FPD relies on the following statutory authority:

> A person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal, including ancillary matters appropriate to the proceedings.

18 U.S.C. § 3006A(c).

> Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including . . . all available post–conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

21 U.S.C. § 848(q)(8).

In addition to these federal statutes, the FDP relies on General Order Number 49 issued by the Chief Judge of the United States District Court for the Eastern District of Arkansas, which states in part:

> The Federal Public Defender Office is hereby appointed on ancillary matters appropriate to the proceedings in which the Federal Public Defender was previously appointed pursuant to an Order of this Court — provided it is apparent to the Federal Public Defender that no change in the client's financial condition has occurred which would render the person financially ineligible for appointment of counsel under the Criminal Justice Act and provided that the matter at hand will require substantial work by counsel and is significant enough to warrant appointment of counsel.

In addition to this authority, there is the longstanding requirement that an applicant for federal *habeas corpus* relief must exhaust the remedies available to the applicant in state court before federal relief can be granted. 28 U.S.C. § 2254(b)(1)(A). As a result of this requirement, the federal district courts in Arkansas have routinely held federal *habeas corpus* proceedings in abeyance or dismissed them where it appears that a state remedy has not been exhausted. This occurred in the *Engram, Hill, Nance,* and *Newman* cases mentioned in our *Hill per curiam* referenced above.

The existence of unexhausted state remedies has given rise to the question of representation for indigent capital defendants for purposes of exhausting those state remedies. Because efforts to pursue federal *habeas corpus* relief may be renewed following exhaustion of state remedies, assuming state relief is not forthcoming, the FPD and federal district courts in Arkansas have viewed these state proceedings as ancillary to federal *habeas corpus* relief. Indeed, by General Order No. 49, the Chief Judge for the Federal District Court for the Eastern District of Arkansas has said as much and relies on § 3006A(c), which makes reference to "ancillary matters appropriate to the proceedings." 18 U.S.C. § 3006A(c). The question then to be resolved is whether state proceedings are ancillary matters or whether the federal statutory reference is only to ancillary federal matters.

On this point, we are persuaded by the Eleventh Circuit's reasoning in *In re Lindsey, supra.* In *Lindsey,* a state prisoner sought a writ of *mandamus* against the federal district judge to appoint qualified counsel for state post-conviction review of unexhausted claims. 875 F.2d at 1502-1503. The Eleventh Circuit concluded that the state proceedings for which Lindsey sought assistance "are not procedural mechanisms employed within the context of a federal action to insure the protection of a person's rights in that action." *Id.* at 1506. The *Lindsey* court also noted that allowing the payment of fees under § 848(q)(8) would have the practical effect

of supplanting state-court systems for appointment of counsel for unexhausted matters. *Id.* at 1506. *See also House v. Bell,* 332 F.3d 997 (6th Cir. 2003) (holding § 848(q) does not authorize an expanded appointment for an FDA to represent indigent, capital defendants in state post-conviction proceedings); *Sterling v. Scott,* 57 F.3d 451 (5th Cir. 1995) (interpreting § 848(q)(8) as providing for right to counsel only in federal proceedings). Accordingly, the court declined to read either § 848(q)(8) or the reference to "ancillary matters" in § 3006A(c) so broadly as to encompass state post-conviction relief. *In re Lindsey,* 875 F.2d at 1506.

We conclude that the reference to ancillary matters in § 3006A(c) is to federal proceedings. We do so with an eye to the AEDPA of 1996 and to inherent principles of federalism and comity embedded in that act, as well as to federal case law. In sum, we conclude that the federal court appointment of the FPD for indigent capital defendants in federal *habeas corpus* matters does not carry over to state proceedings.

We turn next to the FPD's contention that its status in these state matters equates to attorneys who are retained by capital defendants or who provide *pro bono* legal services. We disagree that this is a comparable circumstance. Our Rule 37.5 provides an elaborate process for appointing qualified legal counsel for indigent capital defendants who desire representation for post-conviction relief. To be appointed counsel under that rule, the defendant must be indigent and either accept appointed counsel or be unable to make a competent decision whether to accept or reject an attorney. Ark. R. Crim. P. 37.5(b)(2). As already noted in this opinion, Rule 37.5 was adopted in 1997 to comply with the AEDPA of 1996 and Act 925 of 1997.

The FPD is correct that Rule 37.5 does not expressly contemplate appointment of counsel after the issuance of the state mandate and after federal *habeas corpus* proceedings have begun. Nonetheless, resolution of a state remedy, even after issuance of the mandate, necessarily falls within the ambit of Rule 37.5, which is this court's special rule for appointment of counsel for persons under a death sentence and which was adopted to comply with the AEDPA.

We conclude that appointment of counsel for state proceedings to resolve state issues and employ state remedies is a matter for state courts. We observe that in *Robbins v. State, supra,* this court previously had appointed counsel in 2002 to pursue a recall of the

mandate. *See* Motion for Appointment of Counsel Granted (December 12, 2002). We did so after the federal district court had dismissed a federal *habeas corpus* petition due to non-exhaustion of state remedies.

We emphasize that should qualified FPD attorneys wish appointment to represent capital defendants, who are agreeable to that appointment, in matters involving exhaustion of state remedies, we foresee no encumbrance to such appointments. Any intimation that this court is banning the FPD from state-court representation of capital defendants (and that argument was made in oral argument) is not accurate. However, we also emphasize that we view these exhaustion proceedings as part of the State's comprehensive Rule 37.5 review, which is contemplated by the Congressional Act in the AEDPA.

Counsel for the FPD relies extensively on this court's case of *Courtney v. Butt, supra,* where this court refused to look into the financial circumstances of a person who was represented by Northwest Arkansas Legal Services, Inc., which was chartered and funded pursuant to a Congressional Act. According to the FPD, this court held that the trial court had no authority under the state's indigency rule to delve into a litigant's eligibility for representation by the federal program, after Legal Services assumed representation. Similarly, the FPD contends that this court is without authority to contest the FPD's representation when the FPD is acting as counsel and when capital defendants have not applied for appointment of counsel in state court.

But again that argument casts a blind eye to the fact that the FPD's representation in these matters is at odds with this court's interpretation of Rule 37.5, which was adopted pursuant to Congressional Act. Either the state courts control state remedies and the appointment of qualified counsel in post-conviction proceedings as contemplated by the AEDPA, or they do not. We conclude that it is the responsibility of the State, and specifically state courts, to determine the availability of state remedies. That responsibility includes the appointment of qualified, competent counsel under Rule 37.5, which had its genesis in the AEDPA. It further includes the responsibility to determine if the defendant accepts appointed counsel. In one recent case, *State v. Newman, supra,* at various times the defendant did not want FPD representation in the state proceedings and even fired the FPD in open court.

We finally wish to respond to the FPD's argument that its office is providing competent counsel in these state proceedings at no cost to the state. Its argument, in essence, is that we are looking a gift horse in the mouth. But, again, it is this state's responsibility to oversee appointment of counsel for indigent capital defendants in state proceedings — not the responsibility of the federal government. Moreover, the FPD's assertion appears to discount principles of federalism and comity and to be at odds with the policy considerations that led to the AEDPA.

It is, therefore, the opinion of this court that counsel appointed to represent indigent capital defendants in connection with unexhausted state remedies after the mandate has issued must comply with the criteria for appointment set out in Rule 37.5, including whether the defendant accepts appointment of counsel, and further must be appointed by this court. This, of course, does not hamper or militate against this court's appointment of the FPD for this purpose.

GLAZE, J., concurring in part and dissenting in part.

TOM GLAZE, Justice, concurring and dissenting. The majority opinion is confusing. It first poses the legal issue before this court: "By what authority is the Federal Public Defender representing a defendant in state court?" The majority court posits this issue in an opinion in this appeal, and purports to answer the issue that it asserts exists in four separate capital cases filed and pending in our court.[1] This court already addressed this question in *Newman v. State*, 363 Ark. 199, 211 S.W.3d 543 (2005).

In the *Newman* case, the trial court ruled that the federal public defenders could not represent Newman in any state proceeding, entering an order to this effect, and also denied the federal attorneys' motion for reconsideration. Following the trial court's decision, our court upheld the trial court by granting the State's motion to dismiss. We also granted Newman's *pro se* motion to dissolve this court's stay of execution. This court filed no written opinion, but I filed a concurring opinion setting out my reasons for upholding the trial court.

---

[1] *See Engram v. State*, CR99-928; *Hill v. State*, CR00-1210; *Nance v. State*, CR99-365; and *Newman v. State*, CR03-1257.

In my written opinion, I relied on the case of *In re Lindsey*, 875 F.2d 1502 (11th Cir. 1989), concluding that the federal public defenders have no standing in state proceedings because no authority supports such action. In fact, the *Lindsey* court held that 18 U.S.C.A. § 3006A, the federal statute under which counsel may be appointed to represent indigent defendants in federal courts, did not entitle a defendant "to the assistance of a federally-appointed lawyer . . . in search of state-court remedies . . . because, while in state court, [the defendant] will be neither 'seeking relief under' [28 U.S.C.A. §] 2254 nor pursuing 'ancillary matters' as those terms are used in Section 3006." The court in *Lindsey* concluded with the following:

> We decline to read the words "seeking relief under section . . . 2254" so broadly as to encompass state collateral-review proceedings. Although federal habeas petitioners must exhaust all available state remedies as a prerequisite to obtaining federal habeas relief, that requirement is based in principles of federalism that belie the notion that an inmate pursuing state collateral review "is seeking relief under section 2254." To hold otherwise would be to relegate state-court collateral proceedings to the status of meaningless procedural hurdles placed in the path to a *federal* writ of habeas corpus.

*Lindsey*, 875 F.2d at 1508 (emphasis in original). *See also House v. Bell*, 332 F.3d 997 (6th Cir. 2003); *Sterling v. Scott*, 57 F.3d 451 (5th Cir. 1995); and *Hill v. Lockhart*, 992 F.2d 801 (8th Cir. 1993). The federal cases set out above and our *Newman* decision clearly support the trial court in the *Hill* appeal presently before us.

Now, I return to the majority opinion, which seems to rely on the same authority set out in my concurring opinion in the *Newman* case, issued on August 3, 2005. Today's majority appears particularly persuaded by the *Lindsey* decision, and it correctly concludes that the federal district court's appointment of the federal public defenders for indigent capital defendants in federal habeas corpus matters does not carry over to state proceedings. Up to this point, I fully agree with the result reached by the majority. However, the majority opinion then drifts off into a confusing analysis that I do not understand, but as to the portion that I am able to follow, I simply say it is dead wrong.

The majority writes, in relevant part, the following:

> We emphasize that *should qualified [federal public defender] attorneys wish appointment to represent capital defendants, who are agreeable to*

> *that appointment, in matters involving exhaustion of state remedies, we foresee no encumbrance to such appointments.* Any intimation that this court is banning the [federal public defender] from state-court representation of capital defendants ... is not accurate. However, we also emphasize that we view these exhaustion proceedings as part of the State's comprehensive Rule 37.5 review, which is contemplated by the Congressional Act in the [Anti-Terrorism and Effective Death Penalty Act].

(Emphasis added.)

Nowhere do I find language in our Rule 37.5 that permits federal district courts to appoint federal public defenders to represent capital defendants in this state's courts or proceedings. As far as the federal law is concerned, such a defendant shall not apply for and be granted a writ of habeas corpus unless that defendant has exhausted his remedies available in state court. *See* 28 U.S.C.A. § 2254(b)(1) and (b)(1)(A). Again, the *Lindsey* case on which the majority and I rely said it best — "To hold otherwise would be to relegate state-court collateral proceedings to the status of meaningless procedural hurdles placed in the path to a federal writ of habeas corpus." *Lindsey*, 875 F.2d at 1508.

For the reasons set out above, I concur in part and dissent in part.