Cite as 2020 Ark. 224

# SUPREME COURT OF ARKANSAS

No. CR-19-682

| | |
|---|---|
| | **Opinion Delivered:** June 4, 2020 |
| ALVIN RAY WILLIAMS<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION [NO. 60CR-94-1676] |
| V. | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | <u>AFFIRMED</u>. |

**JOHN DAN KEMP, Chief Justice**

Alvin Ray Williams appeals an order of the Pulaski County Circuit Court dismissing his petition for writ of error coram nobis. For reversal, Williams contends that the circuit court abused its discretion in dismissing his petition because the State suppressed evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and because he diligently pursued the writ. We affirm.

## I. *Facts*

In November 1994, Williams was convicted of the first-degree murder of Ron Henry and sentenced to life imprisonment. On direct appeal, he acknowledged that he had shot and killed Henry, but argued that the evidence presented at trial established his defense of justification and failed to establish that he purposely caused Henry's death. *Williams v. State*, 325 Ark. 432, 436, 930 S.W.2d 297, 299 (1996). This court held that the evidence was sufficient for the jury to infer that Williams acted purposely. *Id*. at 437, 930 S.W.2d at 299.

We stated,

One witness had struggled with the victim prior to the victim's death; this witness did not see a gun on the victim, but did see [Williams] with a gun just prior to the killing. Another witness argued with the victim prior to the murder. She testified that she did not see the victim with a gun during their argument but later saw [Williams] pull a gun from his pants and try to point it at the victim's head; she also saw the gun up in the air "and it was just going ever which way." This witness also testified that [Williams] initiated the altercation with the victim. Another witness, who was babysitting at the house next door to where the murder occurred, testified that she saw and heard people talking loudly in the yard; she later heard gunfire and saw one person chasing the other around a parked car; she saw the person who was doing the chasing holding a gun and heard the other person say "[p]lease don't shoot me"; she also saw the man who had the gun leave the scene. A neighbor testified that he saw someone shooting at the victim while the victim tried to duck and dodge the bullets. The neighbor stated that the shooter would pause, look under the car to locate the victim's feet, and then rise to fire another shot. The officer who arrested [Williams] found him hiding under some bushes a block from the murder scene; the officer could hear [Williams] breathing heavily and noticed where [Williams] had covered himself with leaves.

*Id.* at 437–38, 930 S.W.2d at 299–300. In rejecting Williams's justification argument, we explained that he was the only one seen with the gun, Henry pleaded for his life, Williams kept shooting as Henry dodged bullets, and Williams fled the scene. *Id.* at 439, 930 S.W.2d at 300. This court later affirmed the denial of his Rule 37 petition for postconviction relief. *Williams v. State*, CR-97-1020 (Ark. Dec. 10, 1998) (unpublished per curiam).

On December 11, 2015, Williams filed a petition to reinvest jurisdiction in the circuit court to consider his petition for error coram nobis on the ground that the State had suppressed an exculpatory statement to police by a witness, Donald Ray Smith. On January 7, 2016, we granted Williams's petition by syllabus entry. *Williams v. State*, CR-95-194 (Ark. Jan. 7, 2016). Williams filed his petition for writ of error coram nobis in the Pulaski County Circuit Court. The circuit court denied it without a hearing, and Williams appealed. In a February 2017 opinion, we reversed and remanded for an evidentiary hearing and an order

2

containing specific findings on whether Williams was entitled to relief. *Williams v. State*, 2017 Ark. 20, at 1, 518 S.W.3d 653, 654. We also granted his request to proceed in forma pauperis and appointed Lee D. Short as counsel. *Id.*, 518 S.W.3d at 654.

On remand, the circuit court held an evidentiary hearing on April 22, 2019. Five witnesses testified. First, attorney John Williams testified that he met with Williams's daughter in early 2015 about a possible *Brady* violation. John Williams unsuccessfully tried to contact Williams's trial attorney, Tammy Harris, to see if she had received the statement Donald Ray Smith gave to the police. John Williams never made contact with Harris and never located the defense file from trial. He obtained the case files from the prosecutor's office and the Little Rock Police Department (LRPD), both of which contained the transcribed statement of Donald Ray Smith. The LRPD had listed Smith as a witness, but the prosecutor's office had not. John Williams filed the motion to reinvest jurisdiction in the circuit court to consider a petition for writ of error coram nobis. He later withdrew from the case because of new employment.

Donald Ray Smith, who went by the nickname "Long Beach," testified about the 1994 incident between Williams and Henry. Smith explained that he and Williams were walking together one evening when they came into contact with Henry. Smith testified that Henry was involved in an altercation with the family of his child's mother. Smith did not see that Williams had any firearms. A woman named Rhoda came outside, called Williams a name, and "started mouthing off about something" to Williams and Henry. Smith told Henry, "Let it go. Go home man." Smith testified that he saw Williams extend his arm toward Henry with his finger pointed at Henry's head. At that point, Williams and Henry started tussling,

and Smith saw a gun. Smith did not know whose gun it was or who had it first. He tried to grab it, but could not, and it was being pointed toward him. Smith fled the scene while Williams and Henry wrestled for the gun. Smith further testified that no one had contacted him on Williams's behalf in 1994. Smith stated that if Williams's attorney had asked him to testify at Williams's trial, then he would have done so. Smith also confirmed that his 1994 statement to police was accurate.

Williams testified that Harris had given him a copy of her file in 1994, but that he did not see Smith's statement in it. Williams also stated that he did not know Smith's real name until he met Smith's nephew in 2010. Williams acknowledged on cross-examination, however, that he saw Smith's name and address in Harris's file in 1994 and that he told Harris that Smith was "Long Beach." Williams testified that Harris went to investigate, but "she couldn't find Long Beach. Nobody was at that house." According to Williams, Harris told him that the police were going to find Smith, "[a]nd when he gives a statement to the police, we'll get it." But Williams claimed they never got a statement.

Attorney John Johnson testified that he was the deputy prosecutor assigned to Williams's jury trial. He explained that, in 1994, when additional information became available after the initial file was sent from the LRPD to the prosecutor's office, the prosecutor assigned to the case would receive that additional information in a manila envelope. The prosecutor would then notify defense counsel that copies of the new material could be picked up at the front desk in the prosecutor's office. In Williams's case, the initial file sent by Detective Ronnie Smith arrived at the prosecutor's office on May 26, 1994. That initial file contained a report by Detective Smith that named "Ray Donald Smith" as a witness and

4

listed his address. Johnson testified that he received additional information, including Smith's statement, after he received the initial police file, and that information was provided to Harris. Although Johnson did not specifically remember calling Harris, Johnson testified that he had "been doing it the same way the whole time that [he had] been a prosecuting attorney, so that would be [his] practice." Johnson also testified that a discovery motion was filed on August 22, 1994, and someone from the public defender's office copied the prosecutor's file on September 8, 1994. Donald Ray Smith gave his statement on June 3, 1994, so it was "entirely likely that that statement was in the file at the time the public defender copied [it]." He stated that, if that was the case, then there would have been no reason to notify Harris about it separately.

Detective Smith testified that he first submitted the case file to the prosecutor on May 26, 1994, and submitted additional information, including Smith's statement, as it became available. Detective Smith's practice was to place the information in a manila envelope with the assigned prosecutor's name on it and carry it to the LRPD satellite office, which would send it to the prosecutor's office. Detective Smith acknowledged that he did not recall what was in each envelope in this case.

On June 10, 2019, the circuit court issued an order denying the petition for a writ of error coram nobis. It found that (1) Smith's statement was not suppressed, (2) the statement was not favorable to Williams and would not have affected the outcome of the trial, and (3) Williams did not exercise due diligence in bringing his claim. Williams appeals.

5

## II. *Writ of Error Coram Nobis*

On appeal, Williams argues that the circuit court erred in denying his petition for writ of error coram nobis because he met the three requirements for a successful *Brady* claim and because he acted diligently in filing his petition.

A writ of error coram nobis is an extraordinary remedy that is available in compelling circumstances to achieve justice and to address fundamental errors, including *Brady* violations. *See Larimore v. State*, 327 Ark. 271, 279–80, 938 S.W.2d 818, 822 (1997). The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and that, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Martinez-Marmol v. State*, 2018 Ark. 145, at 2, 544 S.W.3d 49, 52.

Although there is no specific time limit for seeking a writ of error coram nobis, due diligence is required in making an application for relief. *Newman v. State*, 2009 Ark. 539, at 5, 354 S.W.3d 61, 65. Due diligence requires that (1) the defendant be unaware of the fact at the time of the trial; (2) the defendant could not have, in the exercise of due diligence, presented the fact at trial; and (3) the defendant, after discovering the fact, did not delay bringing the petition. *Id.* at 6, 354 S.W.3d at 65.

The denial of a coram nobis petition is reviewed for abuse of discretion. *Pelletier v. State*, 2015 Ark. 432, at 3, 474 S.W.3d 500, 502. An abuse of discretion lies when the circuit court's decision is rendered improvidently, thoughtlessly, or without due consideration. *Id.*, 474 S.W.3d at 502. The circuit court's findings of fact, on which it bases its grant or denial of the petition, will not be reversed unless they are clearly erroneous. *Newman v. State*, 2014

Ark. 7, at 13–14. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* at 14. The circuit court determines witness credibility and assesses the weight to be given the evidence. *Strom v. State*, 348 Ark. 610, 614, 74 S.W.3d 233, 235 (2002).

## A. Withheld-Evidence Claim

Under *Brady*, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment. *Brady*, 373 U.S. at 87. A successful *Brady* claim has three components: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *Sanders v. State*, 374 Ark. 70, 72, 285 S.W.3d 630, 633 (2008) (per curiam). To merit relief, the petitioner must demonstrate that there is a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the information been disclosed at trial. *Id.*, 285 S.W.3d at 633.

Here, in its order denying the petition, the circuit court found that Williams failed to prove the suppression, favorability, and prejudice elements of his *Brady* claim. Williams challenges each of these findings on appeal.

First, the circuit court found that the statement was not suppressed. It reasoned that

> both the detective and the prosecutor testified that items were supplemented to the state's file after the initial submission. Once new information was received, it was the deputy prosecutor's practice to provide that information to the defense attorney directly. Additionally, Detective Smith testified that

7

in 1994 recorded statements were transcribed within a few weeks. Once transcribed, the statements were sent to the deputy prosecutor assigned to the case. The statement was taken on June 3, 1994. The entire prosecutor's file was copied by the public defender's office on September 8, 1994. There was no evidence presented to show that the statement was not in the file that was copied by Ms. Harris'[s] office on that day. The court finds that the totality of the evidence presented shows that it was included in the file.

We agree with the circuit court that Williams failed to show that the statement was suppressed. Johnson's practice was to contact the defense attorney and turn over any additional evidence after receiving it. Additionally, Williams failed to offer evidence supporting his claim that Smith's statement was not in the file when it was copied in September 1994. Williams's claim rests on his own allegations, "which need not be considered to be inherently truthful." *Jackson v. State*, 2009 Ark. 176, at 5 (per curiam); s*ee also Thacker v. State*, 2016 Ark. 350, at 5, 500 S.W.3d 736, 740 ("A court considering a claim of a *Brady* violation in a coram-nobis petition is not required to take the petitioner's allegations at face value without substantiation."). His credibility was a matter for the circuit court, and it did not credit his allegations. Thus, we hold that its ruling on suppression was not clearly erroneous.

Second, as to favorability and prejudice, the circuit court found that

[t]he statement of Donald Ray Smith was not favorable to Petitioner. Mr. Smith's testimony was that he only witnessed the first part of the incident where Petitioner and the victim were struggling over a gun. After seeing this, Mr. Smith ran away from the house and did not see the actual shooting, nor did he see who originally produced the gun. Other witnesses testified at the trial, that, after the struggle that was seen by Mr. Smith, Petitioner had possession of the gun. While holding the gun, Petitioner pursued the victim as he ran around his car, shooting multiple times, striking the car and the victim. Even by Petitioner's own statement to police, the victim was not armed when Petitioner shot him. Therefore, the court finds that the statement of Donald Ray Smith was not favorable to Petitioner, and his testimony would not have changed the outcome of the trial.

8

Viewing the entirety of the evidence, we are not left with a definite and firm conviction that the circuit court made a mistake on its favorability and prejudice findings. Its findings take into consideration the evidence presented at the error coram nobis hearing, as well as trial testimony. Particularly compelling are the facts that Smith did not see the actual shooting and Williams's admission that Henry was unarmed when he chased and shot him. Thus, the circuit court's conclusion that Smith's statement was neither favorable to Williams nor would have changed outcome of trial was not clearly erroneous. Because Williams failed to establish each of the three components of his *Brady* claim, we hold that the circuit court did not abuse its discretion in denying his error coram nobis petition.

## B. Diligence

Lastly, Williams contends that the circuit court erred in finding that he was not diligent in bringing his claim. The State concedes that this finding constitutes error. We agree. This court previously considered Williams's diligence in its 2017 opinion and rejected the State's argument that Williams was not diligent in pursuing the writ. *Williams*, 2017 Ark. 20, at 4, 518 S.W.3d at 655. The doctrine of law of the case dictates that a decision made in a prior appeal may not be revisited in a subsequent appeal. *Cloird v. State*, 352 Ark. 190, 194, 99 S.W.3d 419, 422 (2003). Because Williams's diligence has previously been decided in his favor in this error coram nobis case, we are barred under the doctrine of law of the case from revisiting it in this appeal. Notwithstanding the circuit court's error on diligence, reversal is not warranted because Williams failed to establish a meritorious *Brady* claim. We therefore affirm the denial of Williams's petition for writ of error coram nobis.

Affirmed.

HART, J., dissents.

9

**JOSEPHINE LINKER HART, Justice, dissenting.** In *Williams v. State*, 2017 Ark. 20, 518 S.W.3d 653 (*Williams I*), this court reversed the Pulaski County Circuit Court's dismissal of Mr. Williams's petition for a writ of error coram nobis, requiring it to hold "an evidentiary hearing and an order containing findings of fact." It is troubling that this court has now affirmed the dismissal of Alvin Ray Williams's petition for writ of error coram nobis when all of the circuit court's findings are clearly erroneous.

As the majority notes, the circuit court found that the evidence that Mr. Williams claimed was suppressed, a statement that Donald Ray Smith, a.k.a. "Long Beach," gave to Little Rock Police detective Ronnie Smith (1) was not suppressed, (2) was not favorable to Mr. Williams and would not have affected the outcome of the trial, and (3) Mr. Williams was not entitled to a writ of error coram nobis because he did not exercise due diligence in bringing his claim. All three of these findings are infirm as a matter of fact, a matter of law, or both.

For expediency, I first dispose of the circuit court's "due diligence" rationale. Due diligence was rejected in *Williams I.* I am mindful that the due-diligence condition in Arkansas's error coram nobis jurisprudence seems to come and go like the Cheshire Cat in *Alice in Wonderland*. However, the rejection of the State's due-diligence argument in *Williams I* has to stand in this case, if for no other reason, the circuit court is bound by the law-of-the-case doctrine. With this court having already decided that Mr. Williams was not precluded from obtaining error coram nobis relief because he failed to exercise due diligence, the circuit court did not have the power to overrule our decision.

Likewise, the circuit court clearly erred in finding that Donald Ray Smith's statement was not suppressed. The only direct evidence of whether the statement was provided to the defense came from Mr. Williams himself, who testified that he reviewed the file and that Smith's statement was not in the file. Accordingly, the circuit court's finding that "there was no evidence presented at the hearing to show that Petitioner's trial counsel did not have the statement of Donald Ray Smith," is clearly wrong.

Further, the State did nothing to refute Mr. Williams's testimony. While the circuit court found deputy prosecutor John Johnson's testimony regarding the process whereby the Pulaski County prosecutors attempted to fulfill its disclosure obligations, determinative of the issue, a close reading of the testimony reveals that the circuit court's reliance on it is misplaced. Johnson described the process that was supposed to be followed. He had no specific recollection with regard to Mr. Williams's case, including whether the file was actually copied when Detective Smith forwarded a transcript of his interview with Donald Ray Smith. However, much of the process of disclosing discovery depended on office personnel besides Johnson. Significantly, the State did not call any of the office personnel that actually handled the file. Furthermore, if Mr. Williams's trial counsel reviewed the "open file," Johnson would not necessarily be aware of it. Moreover, if the file was copied for the defense, the procedures that Johnson described required that a notation be made on the document. No such notations appeared.

The circuit court found it significant that Mr. Williams failed to produce his trial counsel, Tammy Harris, to testify that she never received the Smith statement. However, I cannot ignore the fact that the State made no effort whatsoever to locate Ms. Harris; if she

had testified that she had received the file, it would have been conclusive on this issue. Thus, Ms. Harris's absence at the hearing could just as easily be charged *against* the State. This was, after all, an adversarial proceeding.

Finally, the finding by the circuit court that the Smith statement was not "favorable" to Mr. Williams is clearly erroneous as both a matter of law and fact. As the majority notes, under *Brady v. Maryland*, 373 U.S. 83 (1963), to be "favorable" to a defendant, the suppressed information must be either exculpatory or useful for impeachment. The circuit court concluded that it was not "helpful" because Smith "could not say who initially had the gun, and he left the scene before the actual shooting." This analysis ignores the fact that Mr. Williams presented a self-defense theory at trial and that Smith claimed he never saw Mr. Williams with a gun. This part of the statement has value as impeachment of James and Merchel Moore, who testified that the victim came to their house unarmed. The person possessing a weapon is an important consideration when a defendant presents a justification defense when the issue is to determine who the aggressor was.

For the foregoing reasons, I would reverse the circuit court's dismissal of Mr. Williams's petition for writ of error coram nobis and remand for a new trial.

I dissent.

*The Short Law Firm*, by: *Lee D. Short*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.